253 F.2d 295
 Louis FREEMAN, Trustee in Bankruptcy of Brokol Manufacturing Company
v.
Joseph F. J. MAYER, District Director of Internal Revenue for the District of New Jersey, Appellant.
 No. 12346.
 United States Court of Appeals Third Circuit.
 Argued February 6, 1958.
 Decided March 10, 1958.
 
 Elmer Kelsey, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Louise Foster, Attys., Dept. of Justice, Washington, D. C., Chester A. Weidenburner, U. S. Atty., Newark, N. J., Nelson Gross, Asst. U. S. Atty., Hackensack, N. J., on the brief), for appellant.
 A. Robert Rothbard, Newark, N. J. (Bergman & Rothbard, Newark, N. J., on the brief), for trustee.
 Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 This dispute between a trustee in bankruptcy and a Collector of Internal Revenue concerns the status and disposition of property of Brokol Manufacturing Company, presently a bankrupt, which the Collector reduced to possession and wishes to retain for delinquent federal taxes. The trustee, on the other hand, has asserted that the property in question is subject to administration in bankruptcy where the tax lien, though recognized, must yield priority to certain wage claims and administrative expenses as provided in Section 67, sub. c of the Bankruptcy Act. 11 U.S.C.A. § 107, sub. c. The matter was originally adjudicated by a bankruptcy court, but on appeal this court held that the controversy did not lie within bankruptcy jurisdiction. In re Brokol Mfg. Co., 3 Cir., 1955, 221 F.2d 640. Thereafter, the trustee initiated this plenary suit against the District Director of Internal Revenue, the successor to the Collector, and recovered judgment for the amount in dispute. D.C.N.J.1957, 152 F.Supp. 383. This appeal followed.
 
 
 2
 The involuntary petition, pursuant to which Brokol Manufacturing Company was adjudicated bankrupt, was filed the day after the taxing authorities had levied upon all property at the Brokol place of business in distraint for federal taxes. For purposes of this case, the circumstances are sufficiently disclosed by an undisputed affidavit of the Deputy Collector who made the levy. He says that, acting under warrants authorizing him to distrain for taxes in the amount of $5,742.25, "* * * he seized the goods, chattels, effects and all property or rights to property of the said taxpayer at its premises 89 Madison Street, Newark, New Jersey, on December 11, 1951, at 3:15 P. M.; that he securely locked said premises with a United States Government padlock, and retained the key therefor, which key he possesses at the present time; that as a result thereof, he has and claims possession of all of such property for himself and for and on behalf of the Collector of Internal Revenue, * * *."
 
 
 3
 It also appears without dispute that federal tax assessments against Brokol Manufacturing Company, as implemented by tax liens duly filed in the appropriate Register's Office, aggregated almost $20,000, although the actual levy in suit was made pursuant to the warrants for distraint totaling only $5,742.25. The tangible property thus seized was later sold, without prejudice to the present controversy, for $7,100.
 
 
 4
 In these circumstances the trustee in bankruptcy properly concedes that the amount of $5,742.25, plus proper costs and expenses, can lawfully be retained by the taxing authorities. The present record shows that the Collector's costs, including a charge by Brokol's landlord for the use of the premises after their padlocking by the taxing authorities, aggregated $1,749.51. This sum, added to the face amount of the warrants, gives the taxing authorities an unchallenged right to hold assets of the taxpayer worth $7,491.76. However, the taxing authorities realized only $7,100 from the sale of all of Brokol's tangible property. In other words, the sale yielded no surplus over the amount as to which the taxing authorities had unqualified priority. It follows that the fact, much discussed in this briefing and argument, that the government had a lien for taxes greatly in excess of the face of the warrants upon which the distraint was based, is of no importance in this case. For regardless of that fact, the right of the tax collector to retain the entire $7,100 realized from the sale of tangible property is clear.
 
 
 5
 The only doubtful matter in this case is the proper disposition of certain additional money realized by the Collector from another source. The court below found, and the record indicates that, after the petition for bankruptcy was filed, the distraining tax authorities collected $2,667.37 from certain of Brokol's customers, apparently on account of work very recently performed by Brokol and not paid for at the time the Collector levied upon all of Brokol's personal property and closed its establishment. The only question of substance in the present posture of this case is whether the taxing authorities may keep this money or whether they must surrender it to the trustee in bankruptcy.
 
 
 6
 Section 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b, recognizes that a tax lien may be so impressed upon the property of an insolvent as to be valid against a trustee in bankruptcy. In this case the Collector says his actions amounted to such an effective and exclusive appropriation of debts owed Brokol to the satisfaction of Brokol's tax obligations. But Section 67, sub. c of the Bankruptcy Act qualifies Section 67, sub. b by providing that "valid * * * liens for taxes or debts owing to the United States * * * on personal property not accompanied by possession of such property * * * shall be postponed in payment to the debts [for wages and for expenses of bankruptcy administration] specified in clauses (1) and (2) of subdivision (a) of Section 64 of this Act. * * *" 52 Stat. 877 (1938), 11 U.S.C.A. § 107, sub. c. Since, in order to be situated beyond a trustee's reach under this subsection property must be covered by a lien "accompanied by possession of such property", it is arguable that this subsection has no application at all to incorporeal property such as an ordinary debt, which is not a subject of possession in the common sense. However, the courts have not found it too difficult to adopt the lien concept and the possessory concept of distraint to the seizure of choses in action, including ordinary debts for taxes. See United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; Kyle v. McGuirk, 3 Cir., 1936, 82 F.2d 212; United States v. Eiland, 4 Cir., 1955, 223 F.2d 118. But see United States v. Aetna Life Ins. Co., D.C.Conn.1942, 46 F.Supp. 30. But under this view of the tax collector as a lienor who can acquire "possession" of a debt within the meaning of Section 67, sub. c, the least that can be required of him to establish the essential possessory relationship is notification to the debtor that a levy is being made upon that which he owes, or the service of appropriate process upon the debtor purporting to appropriate the debt to the satisfaction of the tax lien. United States v. Eiland, supra; Givan v. Cripe, 7 Cir., 1951, 187 F.2d 225; United States v. O'Dell, 6 Cir., 1947, 160 F.2d 304; In re Holdsworth, D.C.N.J.1953, 113 F. Supp. 878.
 
 
 7
 In this case the Deputy Collector seized everything within Brokol's place of business, padlocked the premises and posted appropriate notices of this distraint for taxes. But nothing beyond this was done by way of notice to debtors or attempted levy upon outstanding obligations. The following day the petition for bankruptcy was filed. It does not appear that the Collector even knew at that time who Brokol's creditors were. Certainly he had taken no steps to establish possessory dominion over any sum owed Brokol. It is clear, therefore, that whatever tax liens may in legal contemplation have attached to debts owed to Brokol no steps were taken sufficient to make these liens "accompanied by possession" of the debts. Therefore, their proceeds, as later collected, are subject to the priorities and procedures of bankruptcy administration indicated in Section 67, sub. c.
 
 
 8
 Finally, it is to be noted that although the taxing authorities collected $2,667.37 owed to Brokol after bankruptcy, judgment below was for the trustee in the sum of $2,179.41, and the trustee has not appealed. This discrepancy between collection and award represents certain expenses incurred in the overall effort to distrain for the Brokol tax indebtedness. Since all concerned have agreed to the deduction of some $500 of these expenses from the collections of outstanding debts we make no point of the matter. We note it because some similar issue contested in another case may present a question of substance.
 
 
 9
 The judgment will be affirmed.