In the Matter of **FIDELITY TUBE COR-PORATION, Bankrupt.**

In re **BOROUGH OF EAST NEWARK and Raymond J. Otis, As Trustee In Bankruptcy of Fidelity Tube Corporation, Appellants.**

No. 12837.

United States Court of Appeals
Third Circuit.

Argued May 26, 1959.

Reargued Dec. 7, 1959; March 8, 1960.

May 3, 1960.

Allan L. Tumarkin, Newark, N. J. (Saul G. Schulter, Newark, N. J., on the brief), for appellant Borough of East Newark.

James E. Masterson, Newark, N. J. (Kleinberg, Moroney & Masterson,

Newark, N. J., on the brief), for appellant Raymond J. Otis, as Trustee in Bankruptcy of Fidelity Tube Corp., Bankrupt.

Richard M. Roberts, Washington, D. C., Chester A. Weidenburner, U. S. Atty., Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Frank W. Rogers, Jr., Attys., Dept. of Justice, Washington, D. C., on the brief), for the United States.

———◆———

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

After attempting unsuccessfully to make an arrangement under Chapter XI of the Bankruptcy Act, as amended, 11 U.S.C.A. § 701 et seq., Fidelity Tube Corporation was adjudicated a bankrupt on February 9, 1954. In the ensuing proceedings the United States filed a claim covering taxes in three categories [1]. One category consisted of claims in respect to which assessments and demands had been made prior to the adjudication. The second category consisted of claims in respect to which assessments had been made prior to bankruptcy but as to which demands, if any, were made after the adjudication. The third category consists of claims in respect to which assessments and demands were made after adjudication. The United States concedes that it does not have a lien as to the claims described in the third category set out above. As to the claims in the first and second categories, the United States asserts that it is a lien creditor for reasons stated hereinafter. The trustee contends as to the claims in categories one and two as stated above that they were not claims secured by liens but were entitled to priority only under Section 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4).

[1]. The claims were based on Federal Unemployment, Withholding, and Federal Insurance Contribution Act (Social Security) Taxes.

The Referee held that the trustee was a "judgment creditor" within the purview of Section 3672 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3672[2] and that therefore recording of notice was a prerequisite if the claims of the United States were to be accorded liens valid against the trustee. It was conceded by the United States that no notice was filed as required by Section 3672 and the Referee accordingly gave the claims of the United States, as stated above, priority only under Section 64, sub. a(4) of the Bankruptcy Act. A petition for review was filed by the United States. The court below reversed the Referee. See 1958, 167 F.Supp. 402. The trustee has appealed.

Section 3670 of the Internal Revenue Code of 1939 provides that the United States shall have a lien on all property and rights to property belonging to any person liable to pay any tax who refuses to pay such tax on demand. Section 3671 states that the lien shall arise at the time of the assessment and shall continue until the liability is satisfied or becomes unenforceable by reason of lapse of time.

Section 3672(a) provides for the filing of notice if liens are to be valid as against mortgagees, pledgees, purchasers, or judgment creditors.[3]

The trustee contends that Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, gives the trustee a status equivalent to that of a judgment creditor, i. e., a creditor who has obtained a judgment in a court of record.[4]

The United States contends that under Section 70, sub. c the trustee is a "fictitious" judgment creditor, not the equivalent of one who has obtained a judgment in a court of record and therefore the trustee is not entitled to prevail against the United States.

We are confronted, therefore, in respect to the claims in category one, with a conflict between two federal policies. On one side there is the congressional intent to give the United States maximum assistance in collecting revenues. This intent is embodied in the lien laws set out in Sections 3670–3672 of the Internal Revenue Act of 1939. Opposing this is the policy of increasing the size of a bankrupt's estate available to unsecured creditors as expressed by Section 70, sub. c and other sections of the Bankruptcy Act. The court below concluded that United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97, L.Ed. 1071, and other authorities required this conflict to be resolved in favor of the United States.[5] The appeal at bar followed. But aside from the issue as to the trustee's status as judgment creditor there is another question which must be determined: viz., whether the claims of the United States falling in category two are secured by liens. This question is whether the fact that the District Director filed claims with the Referee can be considered compliance with the demand requirement of Section 3670 of the Internal Revenue Code.[6] We will deal with this question first.

2. The Internal Revenue Code of 1939 applies to all aspects of this case. 26 U.S. C.A. § 7851(a) (6) (B).

3. Section 3672(a) provides in part: "* * [the] lien [imposed by section 3670] shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * *."

4. Section 70, sub. c, 11 U.S.C.A. § 110, sub. c, provides in part: "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy,

shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

5. For a further discussion of this problem see 4 Collier, Bankruptcy ¶ 67.24 n. 6a.

6. Section 3670 provides: "If any person liable to pay any tax neglects or refuses to pay the same *after demand*, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." [Emphasis added.]

The Referee in his decision, under the heading "Findings of Fact", stated the following: "The United States Treasury Department also proved that its claims have a lien status under 26 U.S.C. §§ 6321 and 6322,[7] but such claims were not filed or recorded as required by 26 U.S.C. § 6323 in order to make them effective as against judgment creditors." This is not a finding of fact but is a conclusion of law. The Referee did not pass specifically on the issue of whether the United States made demand for payment though perhaps the decision of this issue was inherent in his order. Under the Referee's view of the law it was not necessary that he discuss this question for if the trustee had the status of a creditor who had procured a judgment, the claims of the United States were not entitled to prevail against the trustee.

It is apparent that the issue of demand for payment was argued before the Referee since it was discussed in the briefs of the parties. The Trustee and the Borough of East Newark did not seek a review of the decision of the Referee on this point and therefore the finding of the Referee reached the court below unchallenged. But we cannot perceive how the trustee or the Borough could have appealed from the Referee's decision on the demand point since the order of the Referee was in their favor. We cannot tell on the instant record whether or not the issue of demand was argued before the trial judge on the hearing on the petition for review since we do not have the briefs or a record of the oral argument before us. But in its opinion, 167 F.Supp. at page 403, the court below stated that "Its [the United States'] lien is valid and is entitled to payment out of available proceeds prior to a distribution to priority claimants." The trial judge reversed the Referee on the issue of the status of the trustee as judgment creditor and remanded the cause for proceedings not inconsistent with his opinion. We are of the opinion that the issue of the demand by the United States

for payment of the claims in category two was before the court below and was adjudicated in favor of the United States. It would therefore appear to be before this court for adjudication on this appeal.

We must therefore decide three questions: (1) was a demand made by the United States for payment of its claims in the second category in conformity with Section 3670 of the Internal Revenue Code of 1939; (2) if a demand was validly made, is the United States entitled to prevail as a lien claimant on the claims under the second category against the trustee and the Borough; and (3) is the United States entitled to prevail against the trustee and the Borough on its claims in the first category? The second and third questions will be determined by identical principles of law.

As to question (1) as set out in the preceding paragraph, it is clear that assessments were made on the claims in the second category before bankruptcy but demands for payment, if any, were made after adjudication and then only by the filing of formal claims for payment by the Collector with the Referee in Bankruptcy. If such claims would otherwise meet the requirements of Section 3670 of the Internal Revenue Code do the intervening bankruptcy proceedings render inoperative the provisions of Section 3671 which ordinarily would confer lien status.

■■■ As we have stated Section 3670 provides that when a person liable to pay a tax neglects or refuses to pay it "after demand" a lien arises in favor of the United States. Section 3671 provides in pertinent part: "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector * *." It is the contention of the United States that the filing of the claims with the Referee by the Collector were effective demands and that these demands relate

---

7. The statutory references are to sections of the Internal Revenue Code of 1954. **See** note 2, supra.

back to the time of the assessment, admittedly prior to the adjudication. In respect to the filing of a claim in a bankruptcy proceeding as constituting an effective demand we find a helpful analogy in the decision of the Court of Appeals for the Seventh Circuit in United States v. Ettelson, 1947, 159 F.2d 193, 196. In that case a claim was filed with a Probate Court against the estate of the deceased taxpayer and this was treated by Circuit Judge (later Mr. Justice) Minton as the equivalent of the demand required by Section 3670. In the case at bar as in Ettelson, the demand for payment was made at the only place that it could be made, i. e., in the bankruptcy proceeding.[8] Compare, however, In re Crockett, D.C.N.D.Cal.1957, 150 F.Supp. 352, which holds by inference that a claim for taxes by the United States in a bankruptcy proceeding is not a demand within the meaning of Section 3670. See and compare also Sherman B. Ruth, Inc. v. O. S. V. The Marie and Winifred, D.C. Mass.1957, 150 F.Supp. 630, 632; In re Holdsworth, D.C.N.J.1953, 113 F.Supp. 878, 879, and 9 Mertens, Law of Federal Income Taxation § 54.40. We have carefully considered these authorities but we think that logic compels us to follow the holding of the Court of Appeals for the Seventh Circuit in Ettelson. It is clear that if bankruptcy had not intervened the United States would have had a valid lien if demand was made prior to the date when the assessment became unenforceable by reason of lapse of time and we can find no provision of the Bankruptcy Act which would prevent a lien arising in favor of the United States under Sections 3670 and 3671 because of a delayed demand by the District Director.

In view of the provisions of Section 3671 an inchoate lien seems to arise at the time of the assessment which is perfected by a demand and when the demand is made the lien relates back to the date of the assessment, in the case at bar to a time prior to bankruptcy. Plumb, Federal Tax Collection and Lien Problems (Second Installment), 13 Tax L. Rev. 459, 488 (1958) states: "Furthermore, even if notice and demand have not been made before bankruptcy, they may be made thereafter and will relate back to perfect the lien arising upon the prior assessment." See also Macatee, Inc. v. United States, 5 Cir., 1954, 214 F.2d 717, 719.[9]

This brings us to the second and third questions posed above, which as we have said, are governed by identical principles of law. Is the trustee in bankruptcy a "judgment creditor" within the purview of Section 3672? Our ruling must turn in large part upon an interpretation of the decision in United States

---

**8.** The District Director of Internal Revenue in his claim filed with the Referee did not assert liens. He claimed only that the United States was entitled to priority of payment under Section 64 of the Bankruptcy Act. The fact that the District Director did not assert that the United States possessed liens is immaterial. If the claims fall within the purview of Sections 3670 and 3671 of the Internal Revenue Code, as we are of the opinion they do, the District Director is not required to assert a lien or liens. He has made claims on behalf of the United States and the applicable statutes give the claims lien status.

**9.** Section 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b, seems to contravene the contention of the Borough of East Newark and the trustee that the adjudication cut off the right of the United States to perfect its liens.

Section 67, sub. b provides that notwithstanding the provisions of Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96 statutory liens for taxes owing the United States may be valid against the trustee. The last sentence of Section 67, sub. b states that where by the laws of the United States such liens are required to be perfected and arise but are not perfected before bankruptcy, "[T]hey may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements * * *" of the laws of the United States. The Borough of East Newark contends that the word "may" is permissive and that for the statute to effectively authorize the validation of the liens of the United States the word employed should have been the mandatory "shall". We are unable to find any adequate support for this proposition in the pertinent authorities.

v. Gilbert Associates, supra. In the Gilbert case the Supreme Court was confronted with the problem of priority between a federal tax lien and a tax lien of the Township of Walpole, New Hampshire, assessed before the recording of the federal lien. The Supreme Court of New Hampshire held that under the law of that State the assessment of such a tax was in the nature of a judgment and that the Township was a judgment creditor within the meaning of Section 3672 of the 1939 Code. See Petition of Gilbert Associates, Inc., 1952, 97 N.H. 411, 90 A.2d 499. The Supreme Court of the United States disagreed, holding that judgment creditor status created by a fiat of state law was not within the meaning of the phrase "judgment creditor" as used in Section 3672. Cf. United States v. Acri, 1955, 348 U.S. 211, 75 S. Ct. 239, 99 L.Ed. 264. Relying on the Gilbert decision, the Second and Ninth Circuits respectively held that a trustee in bankruptcy was not a "judgment creditor" under Section 3672. Brust v. Sturr, 2 Cir., 1956, 237 F.2d 135;[10] United States v. England, 9 Cir., 1955, 226 F.2d 205.

The trustee in the instant case argues that the Supreme Court's decision in Gilbert was motivated by a desire to procure uniformity among the States in determining questions relating to priority of payment of lien claims and that the Supreme Court ruled as it did because it feared that if each State was left free to designate who was or who was not a "judgment creditor" under their respective laws there would be lack of uniformity. The trustee contends that under Section 70, sub. c of the Bankruptcy Act there is no danger of heterogeneity since we are construing federal and not State law and that therefore the Gilbert decision is not apposite. But the Supreme Court stated, 345 U.S. at page 364, 73 S.Ct. at page 703 "In this instance, we think that Congress used the words 'judgment creditor' in

§ 3672 in the usual, conventional sense of a judgment of a court of record since all states have such courts." This language is decisive. It is true that the authorities cited do not deal with the interrelationship of the Internal Revenue Code with the Bankruptcy Act but we fail to see how the term "judgment creditor" can be given separate, decisive meanings based on the circumstances of the individual case.

We must concede that strong authority takes a contrary position particularly in view of the amendments effected to Sections 70, sub. c of the Bankruptcy Act in 1950 and 1952. See 64 Stat. 26 and 66 Stat. 429. Section 70, sub. c, 11 U.S.C.A. § 110, sub. c, as it now exists and as it existed at the time of the adjudication in the instant case provides: "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

The legislative history indicates that it was the intention of Congress by the 1950 and 1952 amendments to expand the rights of a trustee in bankruptcy generally but the legislative history itself as well as the amendatory statutes leave in doubt the status of the trustee as a judgment creditor under the Internal Revenue Code. But see 4 Collier, Bankruptcy ¶ 70.49 n. 3.

Moreover, there is presently pending in Congress a bill, H.R. 7242, which purports to remove any question as to the status of the trustee as a judgment creditor. See H.Rept. 745, 86th Cong., 1st Sess. p. 10. The report contains a lucid legislative history of Section 70, sub. c of the Bankruptcy Act. It is proposed by the bill to give the trustee the status

10. Brust v. Sturr, 2 Cir., 1956, 237 F.2d 135, seems to alter the position taken in United States v. Sands, 2 Cir., 1949, 174 F.2d 384. The later decision is in line with United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701.

of a creditor who has obtained a judgment against the bankrupt on the date of bankruptcy whether or not such creditor exists. We are of the opinion that the statute must be amended before a trustee in bankruptcy can prevail against the United States under circumstances similar to those at bar.

█ In the light of all the circumstances and the present state of the law we are constrained to agree with the judgment of the court below and we conclude, therefore, that the United States is entitled to prevail against the trustee and the Borough of East Newark on the issues presented. We do not find it necessary to pass on the issues which might have arisen under Section 67, sub. c, read in conjunction with Section 64, sub. a, clauses (1) and (2), of the Bankruptcy Act, 11 U.S.C.A. §§ 107, sub. c and 104, sub. a, clauses (1) and (2), for no such issue is presented by the present record.[11] Accordingly the judgment will be affirmed.

KALODNER, Circuit Judge (dissenting).

I would reverse the judgment of the District Court.

Stripped down to its essence the majority's holding is that a trustee in bankruptcy does not have the status of a "judgment creditor" by virtue of the provisions of Section 70, sub. c of the Bankruptcy Act as amended in 1952.[1] While the majority does not say so in so many words, that it is the core of its holding that a trustee in bankruptcy is not a "judgment creditor" within the meaning of Section 3672 of the Internal Revenue Code of 1939.

In my view there just cannot be two varieties of a "judgment creditor" under separate federal statutes which relate to such creditors. A "judgment creditor" cannot be "fish" under one federal statute and "fowl" under another. Nor does a bankruptcy trustee have a dual personality—that of a "judgment creditor" in one room of the federal legislative structure and a total absence of it in another room of the same structure.

The majority's holding seriously interferes with the administration of the bankruptcy laws because it destroys the centuries-old concept of the common law and equitable jurisprudence which says that one who has levied attachment or execution is a judgment creditor and Section 70, sub. c specifically vests a bankruptcy trustee "with all the rights, remedies and powers of a creditor then holding a lien."

Further, it repeals by judicial fiat a federal statute—Section 70, sub. c— which in the plainest of terms vests a bankruptcy trustee with the status of a "judgment creditor." Moreover, it disregards the express ruling of the Supreme Court of the United States in Myers v. Matley, 1943, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043, 318 U.S. 622, that a bankruptcy trustee is a "judgment creditor", and lastly, it is a reversal of this Court's holding in Salkind v. Dubois, 1937, 105 F.2d 640 that the Bankruptcy Act makes the bankruptcy trustee a "judgment creditor."

In Meyers v. Matley, supra, it was said (318 U.S. at pages 624, 625, 63 S.Ct. at page 782):

"The trustee, as to all property in possession and under the control of the bankrupt at the date of bankruptcy, *is deemed vested, as of that date, with all the rights and remedies of a creditor then holding a lien on the property by legal or equitable proceedings, whether or not*

---

11. The Referee has certified that "all debts entitled to priority under Section 104(a), clauses (1) and (2), have been paid".

In view of the state of the record the statement contained in the opinion, 167 F.Supp. at page 403, "Its [the United States'] lien [*sic*] is valid and is entitled to payment out of available proceeds prior to a distribution to priority claimants.", cannot require revision for there are no outstanding claims falling within the category prescribed by clauses (1) and (2) of Section 64, sub. a.

1. Act of July 7, 1952, c. 579, 66 Stat. 429, 11 U.S.C.A. § 110, sub. c.

*such a creditor actually exists."* (Emphasis supplied.)

In Salkind v. Dubois, the writer of the majority opinion, there speaking for this Court, said (105 F.2d at page 640):

> "Pursuant to the provisions of section 47, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 75, sub. a(2),[2] *a trustee is deemed vested with all of the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings upon property coming into the custody of the bankruptcy court, and therefore the attempted reservation of property was void as against the trustee."* (Emphasis supplied.)

Another member of this Court, Judge Hastie,[3] speaking for the United States Court of Appeals for the Ninth Circuit, in Sampsell v. Straub, 1952, 194 F.2d 228, 231, certiorari denied 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338, said:

> "Section 70, sub. c * * * is employed primarily to protect general creditors of the bankrupt against secret liens. *To this end the trustee is given all the rights which a creditor with a lien by legal or equitable proceedings would enjoy. The trustee unquestionably enjoys the rights of a creditor who has levied attachment or execution on the bankrupt's property."* (Emphasis supplied.)

To the same effect see McKay v. Trusco Finance Co. of Montgomery, Alabama, 5 Cir., 1952, 198 F.2d 431, which cited with approval Sampsell v. Straub, supra. In doing so, it stated (at page 433):

> "* * * It follows that under sec. 70, sub. c of the Bankruptcy Act, the trustee in this case was in the position of a *judgment creditor* with a lien as of the date of bankruptcy. * * *" (Emphasis supplied.)

It is true that the cases cited arose under the Bankruptcy Act prior to its 1950 and 1952 amendments but as the majority says "The legislative history indicates that it was the intention of Congress by the 1950 and 1952 amendments to expand the rights of a trustee in bankruptcy generally * * *." In this connection the following excerpts from the "Historical Note" following Section 110, 11 U.S.C.A. are pertinent.

> "1950 Amendment. Subd. (c) amended by Act Mar. 18, 1950, to place the trustee in bankruptcy in the position of a lien creditor with respect to all of the bankrupt's property".

> * * *

> "1952 Amendment * * * Subd. (c) amended by Act July 7, 1952, § 23(e), to clarify the fact that a trustee has the rights of a lien creditor upon property in which the bankrupt has an interest or as to which the bankrupt may be the ostensible owner."

Section 70, sub. c, although it does not, as amended in 1950 and 1952, use the term "judgment creditor" does spell out in the most definitive language possible the elements which make the bankruptcy trustee a "judgment creditor".

As amended in 1952 (in effect when the bankruptcy petition was filed in the instant case) Section 70, sub. c provides, in part:

> "* * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

The Section, as amended, has been construed, in cases arising under it, to give the trustee in bankruptcy the status of a judgment creditor in language al-

---

2. The predecessor of Section 70, sub. c of the 1952 Act.

3. Sitting by special designation.

most identical with that used in Myers v. Matley, Sampsell v. Straub and Salkind v. Dubois, supra.

In discussing the amended Section this Court, speaking through our brother Hastie, in In Re Consorto Const. Co., Inc., 212 F.2d 676, at page 678, certiorari denied Klein v. Equity Inv. Co., 348 U.S. 833, 75 S.Ct. 57, 99 L.Ed. 657 said:

"The trustee's rights under this Section are not derivative. They are not rights of any existing creditor to which the trustee is subrogated but are independent rights, of such character as a described hypothetical creditor would have enjoyed, created by the Bankruptcy Act itself. * * * " [4]

In United States v. Eiland, 4 Cir., 1955, 223 F.2d 118, at page 123, the late Chief Judge Parker stated with respect to the 1952 version of Section 70, sub. c:

"The effect of the section as amended is to vest the trustee, not only with rights with respect to the bankrupt's property which creditors had acquired at the date of bankruptcy, but also with all rights which creditors *might* have acquired by legal or equitable process on that date * * *." (Emphasis supplied.)

In B. F. Avery & Sons Company v. Davis, 5 Cir., 1955, 226 F.2d 942, 945, it was held that "the rights" of a bankruptcy trustee are those of a "judgment creditor", and in Brookhaven Bank & Trust Company v. Gwin, 5 Cir., 1958, 253 F.2d 17, at page 23, where the status of the bankruptcy trustee was at issue, it was said:

" * * * the 'strong-arm clause' of Section 70, (C) * * * vested in the trustee all of the rights, remedies and powers of a creditor, whether existing or not, who held or who could have obtained a lien by legal or equitable proceedings."

The Seventh Circuit, in In re Lustron Corp., 1950, 184 F.2d 789, certiorari denied Lafayette Steel Co. v. Lustron Corp., 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682, construed Section 70, sub. c, as amended in 1950, to vest in a bankruptcy trustee the rights of a "judgment creditor armed with an execution", and in In re Ripp, 1957, 242 F.2d 849 held Section 70, sub. c, as amended in 1952, to do likewise.

In In re Lustron, supra, it was said (184 F.2d at page 793):

"Under the section [70, sub. c], as amended by the Act of March 18, 1950, the trustee is also vested, as of the date of bankruptcy, with all the rights, remedies and powers of a creditor holding a lien thereon, legal or equitable, whether or not such creditor exists, as to all property of the bankrupt, whether or not coming into possession or control of the court." In a footnote to that statement (Footnote 1) the Court said:

"The language of the amendment is all inclusive, thus embracing in the terms 'legal or equitable,' *a judgment creditor armed with an execution,* specifically mentioned in the section prior to the amendment." (Emphasis supplied.)

In In re Ripp, supra, the Seventh Circuit, with respect to Section 70, sub. c, as amended in 1952, said (242 F.2d at page 852):

"Under Sec. 70 of the Bankruptcy Act, 11 U.S.C.A. § 110 * * * the trustee is vested * * * under subsection c, with 'all the rights, remedies, and powers of a creditor then holding a lien * * * whether or not such a creditor actually exists.' * * * From the time of the filing of the petition, the assets are in *custodia legis* and over them the bankruptcy court has exclusive jurisdiction and the sole right to

4. In In re Sayre Village Manor, D.C.N.J. 1954, 120 F.Supp. 215, 216, it was held that a bankruptcy trustee is a "judgment

creditor * * * holding a lien", under Section 70, sub. c as amended in 1952.

determine the validity of any and all alleged liens thereon. * * *

"So here, when the trustee in bankruptcy was appointed, his title to all assets in the bankrupt's custody, possession or control passed to him; *and, in addition, he was vested with all the rights of judgment creditors armed with execution liens*. The court thereby obtained jurisdiction of the *rem*, exclusive custody over it." (Emphasis supplied.)

The views expressed by the four circuits in the cases cited were subscribed to by the Second Circuit prior to Brust v. Sturr, 1956, 237 F.2d 135 where it held that a trustee in bankruptcy is not a "judgment creditor" under Section 3672 of the 1939 Internal Revenue Code. Two years earlier, in Constance v. Harvey, 1954, 215 F.2d 571 at page 575, certiorari denied 348 U.S. 913, 75 S.Ct. 294, 99 L. Ed. 716, the Second Circuit held a bankruptcy trustee to be a judgment creditor under Section 70, sub. c as amended in 1952, stating:

"* * * under § 70, sub. c of the Bankruptcy Act the Trustee was entitled to be put in the position of an 'ideal' hypothetical creditor—Hoffman v. Cream-O-Products, 2 Cir., 180 F.2d 649, certiorari denied 1950, 340 U.S. 815, 71 S.Ct. 44, 95 L.Ed. 599 * * *." [5]

Earlier, in 1949, the Second Circuit, in United States v. Sands, 174 F.2d 384, expressed a similar view with respect to Section 70, sub. c, as then constituted.

The text writers are in accord with the view that a bankruptcy trustee is a "judgment creditor" under Section 70, sub. c as amended in 1952: Collier on Bankruptcy, 14th ed. (1958) Vol. 4, par. 70.49, pages 1410 et seq.; Remington on Bankruptcy, 1957 ed., Vol. 3, pages 557, 558, 559; Seligson, Creditors'

Rights (1957) 32 N.Y.U.L.R. 708, 31 J. of Nat'l Ass'n of Ref. 113.

The majority apparently has been impelled to its view that a bankruptcy trustee is not a "judgment creditor" under Section 70, sub. c, irrespective of the powers therein vested in him because the section has not appended the definitive label "judgment creditor" to the trustee's statutory vestments.

It says that the "language" used in United States v. Gilbert Associates, 1953, 345 U.S. 361 at page 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 "is decisive" and quotes in that connection this statement:

"In this instance, we think Congress used the words 'judgment creditor' in § 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts."

The statement quoted must be considered in the light of the two sentences which preceded it. They read as follows:

"A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a 'judgment creditor' should have the same application in all the states. * * * "

A reading of the Supreme Court's opinion in the Gilbert Associates case discloses that the reason for its decision was the Court's desire to assure uniformity in the collection of federal taxes and its apprehension that such uniformity would be imperiled if the various states or their subdivisions applied their own standards or criteria in determining what constitutes a "judgment creditor".

It became necessary for the Supreme Court to construe "judgment creditor" as used in Section 3672 because the statute did not define the terms or spell out its elements.

---

5. In Hoffman v. Cream-O-Products, which, incidentally, construed Section 70, sub. c prior to its 1950 amendment, the court said in 180 F.2d at page 650:

"That section [70, sub. c], as has been repeatedly held, confers the status of an ideal lien creditor on the trustee, whether such a creditor exists or not * * *."

However, as it was earlier pointed out Section 70, sub. c, as amended, clearly and concisely spells out in unmistakable language the elements which constitute the bankruptcy trustee a "judgment creditor".

The United States takes the position (in its brief) that the amended Section 70, sub. c makes a bankruptcy trustee a "constructive or statutory judgment creditor" but says that such a creditor "is not a creditor in the usual, conventional sense of a judgment of a court of record" and that "only the creditor in this conventional sense of a judgment of a court of record is within the meaning of" Section 3672. It adds the rather unique statement that "The terms of the Bankruptcy Act state that the trustee in bankruptcy *does occupy the fictitious position of a judgment creditor.*" (Emphasis supplied.)

All that need be said with respect to that contention is that if Section 70, sub. c makes a bankruptcy trustee a "statutory judgment creditor" such a status more than meets the requirement of a "'judgment creditor' in the usual conventional sense of a judgment of a court of record" as specified in United States v. Gilbert Associates, supra.

Significant to this discussion is the following excerpt from the "Statement" in H.R.Rep. No. 1293, 81st Cong. 1st Sess. 4 (1949) in connection with the 1950 amendment to Section 70, sub. c:

"Traditionally, it is the primary office of the Bankruptcy Act to protect creditors, both secured and unsecured; to marshal the bankrupt's assets; and to distribute them among his creditors equitably and ratably, in accordance with their respective rights and interests.

"It follows from these broad general principles, as well as from the basic provisions of the Bankruptcy Act itself, that—

"(A) a trustee in bankruptcy occupies the position of a *'universal' judgment or lien creditor, with all such a creditor's remedies* (Bank-

ruptcy Act, sec. 70.) * * *" (Emphasis supplied).

Prefacing the "Statement", the House Report, under the caption, "Purposes Of The Bill" said in part:

"(b) Section 2 of the bill amends section 70c of the Bankruptcy Act, dealing with the general rights of a trustee in bankruptcy, and is essentially correlative to the amendment to section 60a, effected by section 1 of the bill. Under existing law, a trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy, is deemed vested, as of the date of bankruptcy, with all the rights of a creditor then holding a lien by legal or equitable proceedings, and, as to all other property, with the rights of a *judgment creditor* then holding an unsatisfied execution.

"In view of the amendment made to 60a as well as intrinsically, it is deemed wise to place the trustee in bankruptcy in the position of a lien creditor with respect to all of the bankrupt's property, and section 2 of the bill so amends section 70c. * * *" (Emphasis supplied.)

In the "Committee Amendment" section of the House Report it is said:

"(5) * * * Section 2 is the amendment to section 70c of the act above referred to, which has been placed in the bill for the protection of trustees in bankruptcy as correlative to the amendment to section 60, and also to simplify, and *to some extent expand,* the general expression of the rights of trustees in bankruptcy." (Emphasis supplied.)

The legislative history cited makes clear the Congressional intent to vest the bankruptcy trustee with all of the rights and remedies of a "judgment creditor" armed with execution liens as of the date of the bankruptcy. As was said by Professor Seligson in Creditors' Rights, supra:

"It is immaterial that the trustee is not described as a 'judgment cred-

itor' in the statute if Congress intended to give him that status with all the rights, remedies and powers flowing therefrom. The trustee is the ideal judicial lien 'creditor' and he enjoys that status whether or not such a creditor exists. The greater includes the lesser. Hence, the ideal judicial lien creditor must necessarily be a 'judgment creditor.'

"That Congress intended to give the trustee the status of a 'judgment creditor' is perfectly plain. * * *"

For the reasons stated I would reverse the judgment of the District Court on the ground that it erred in holding that "A trustee in bankruptcy is not a judgment creditor within the purview" of Section 3672 of the Internal Revenue Code of 1939.

Apart from the foregoing, I further disagree with the majority's holding that the United States has a lien status with respect to the claims in the second category [6] even though no demand for payment had been made prior to bankruptcy.

Section 3670 of the Internal Revenue Code of 1939 provides in part:

"If any person liable to pay any tax *neglects or refuses to pay the same after demand,* the amount * * * shall be in a lien in favor of the United States * * *." (Emphasis supplied.)

Cognizant of the statutory requirement that a "demand" for payment must be made in order to confer a lien status on the assessment on which it is based, the majority, despite the intervention of bankruptcy before any demand was made, holds that the mere filing of a "claim" subsequent thereto, with the Referee in Bankruptcy, satisfied the statutory "demand" requirement.

Says the majority:

"In view of the provisions of Section 3671 an inchoate lien seems to arise at the time of the assessment which is perfected by a demand and when the demand is made the lien relates back to the date of the assessment, *in the case at bar to a time prior to bankruptcy.*" (Emphasis supplied.)

The sum of the majority's position is that the courts may, via a "nunc pro tunc", "relate back" a post-bankruptcy "demand" to a pre-bankruptcy "demand".

I disagree.

The majority's disposition does violence to the distribution concept and plan of the Bankruptcy Act.

As was said in United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731, at page 735:

"The Act was intended to set up a particular scheme of distribution not to be varied by exceptions found outside the Act, since to do so would interfere with a well-ordered and efficient working Act. * * * [T]he Bankruptcy Act has its own schedule of priorities intended to cover all situations within its terms and jurisdiction."

The Second Circuit expressed the same view in United States v. Sands, 1949, 174 F.2d 384, where the impact of the Bankruptcy Act on the lien provisions of the Internal Revenue Code of 1939 was concerned. Said the Court (at pages 385–386):

" * * * The Statutory provisions [Section 67 of the Bankruptcy Act] for the collection of unpaid taxes show a complete scheme for the protection of the government revenues of the very kind which the bankruptcy provision is designed to uphold, even though bankruptcy ensues. * * *

"Sec. 67, sub. b, of the Bankruptcy Act preserves certain statutory liens, including those for taxes and debts owing to the United States, even though arising or perfected while the debtor is insolvent

6. As the majority put it:
"The second category consisted of claims in respect to which assessments had been made prior to bankruptcy but as to which demands, if any, were made after the adjudication."

and within four months of bankruptcy; indeed, it goes further and allows the perfecting of such liens as have arisen, but have not been perfected, before bankruptcy. *By § 67, sub. c, however, such liens for taxes 'on personal property not accompanied by possession of such property' are postponed to the first two priorities of § 64, sub. a, supra, even though valid under § 67, sub. b, unless they have been enforced by sale before bankruptcy.* \* \* \*" (Emphasis supplied.)

In In re Lustron Corp., supra it was said (184 F.2d at page 794):

> "*The various provisions of the Act reflect a well co-ordinated general plan for the accomplishment of equal distribution of the bankrupt's property* amongst the bankrupt's creditors. The trustee, as the hand of the court, collects the assets, protects them, and brings them before the court for final distribution; he is trustee for all who have interests, according to those interests. \* \* \* Once a petition has been filed, the court's exclusive and paramount jurisdiction extends to all the bankrupt's property, except as otherwise provided in the Act \* \* \*. *Upon the filing of a petition the custody of the bankruptcy court attaches over all the property in its actual or constructive possession.* \* \* \*" (Emphasis supplied.)

This Court has held with reference to another provision of the revenue laws—the predecessor to Section 3672 of the 1939 Internal Revenue Code—that it must be construed according to its terms. In United States v. Beaver Run Coal Co., 3 Cir., 1938, 99 F.2d 610,[7] where the United States had not *filed* notice of its lien in accordance with the requirements of the statute, we said with respect to the failure to do so (at pages 612–613):

> "Notwithstanding its failure to comply with the requirements of the very act creating its lien, the United States contends its lien is entitled to priority in this case.
>
> "This contention can not be sustained. Whether a statute creating a lien is to be given a liberal or a strict construction, it is well established that '*the character, operation and extent of the lien must be ascertained from the terms of the statute which creates and defines it,* and the *lien will extend only to persons* or conditions provided for by statute, and then only where there has been at least a substantial compliance with *all* the statutory requirements.' \* \* \* *Positive legislative enactments prescribing conditions essential to the existence and preservation of a statutory lien cannot be disregarded.* \* \* \*
>
> "It is a well established doctrine that a *clear, unambiguous statute must be literally construed.* \* \* \*" (Emphasis supplied.)[8]

The majority's holding here that a "demand" made subsequent to bankruptcy "relates back to the date of assessment" and thus meets the requirements of Section 3670 which requires that a "demand" must be made in order for a tax lien to accrue is in direct conflict with our express ruling in In re Lambertville Rubber Co., 3 Cir., 1940, 111 F.2d 45. We there held that there must be, ab initio, a compliance with the provisions of the revenue statutes creating tax liens in order for the latter to inure.

In that case the Commissioner had made an assessment for taxes due the United States but it was not received by the Collector of the district in which the taxpayer maintained its office or place of business. Later an involuntary petition in bankruptcy was filed against the

---

7. The spokesman for the majority, Chief Judge Biggs, was a member of the panel in this case.

8. To the same effect see Miller v. Bank of America, N.T. & S.A., 9 Cir., 1948, 166 F.2d 415, 417 where it was held that Section 3670 and the related Sections 3671 and 3672 are "clear and unambiguous" and must be "literally construed."

taxpayer and a trustee was appointed. He paid the amount due the United States [9] and it later developed that the assets of the bankrupt estate were insufficient to meet expenses of administration. The court below refused to surcharge the trustee with the tax payment stated. We reversed. In doing so Chief Judge Biggs, speaking for the Court, stated (at page 48):

"* * * Nor may it be contended that the claim of the United States was a lien upon the property of the debtor. R.S. § 3186, May 29, 1928, c. 852, Sec. 613, 45 Stat. 875, 26 U.S. C.A. Int.Rev.Code § 3671, provides that the lien of a tax due the United States shall arise when the assessment list is received by the collector. The record of the case at bar is devoid of any evidence that an assessment list including this item of tax was ever received by the collector of the district in which the debtor maintained its office or place of business. It follows that the claim of the United States * * * was entitled to priority simply as provided by Section 64. * * *"

With respect to the district court's citation of Section 67, sub. b of the Bankruptcy Act as permitting tax claims of the United States to be "perfected" after bankruptcy, it was said (at page 49):

"* * * The District Court refused the surcharge because it was of the opinion that since the United States and the State of New Jersey could have perfected their liens their claims must be treated as if they had done so. *We cannot approve such a principle. A tax lien is created by doing certain acts provided by statute. If those acts are not accomplished, no lien comes into being.*" (Emphasis supplied.)

We adhered to the doctrine expressed in Freeman v. Mayer, 1958, 253 F.2d 295, 297 where we held that proceeds of collection of tax obligations by the Collector of Internal Revenue were subject to priorities of the Bankruptcy Act. In this case, following the filing of a bankruptcy petition, the Collector collected from certain of the bankrupt's creditors sums due the bankrupt at the time of bankruptcy "and not paid for at the time the Collector levied upon all of Brokol's [bankrupt's] personal property and closed its establishment." The question presented was "whether the taxing authorities may keep this money or whether they must surrender it to the trustee in bankruptcy." Our answer was that the trustee in bankruptcy, under Section 67, sub. c, of the Bankruptcy Act, was entitled to the funds so collected by the Collector because of his failure to give notice to the bankrupt's creditors from whom collection was made that "a levy is being made upon that which he [bankrupt] owes, or the service of appropriate notice upon the debtor purporting to appropriate the debt to the satisfaction of the tax lien."

The majority's holding in the instant case that "demand" made after bankruptcy may be antedated to such bankruptcy nullifies Section 64, sub. a(4) of the Bankruptcy Act. Under that Section, when bankruptcy proceedings have been instituted, tax claims of the United States which do not have a lien status at the time the bankruptcy petition is filed are not eligible for any recovery other than that granted by the Bankruptcy Act which specifies a fourth priority among general creditors after the payment of any liens which are valid against the trustee.

There the government's claims in the second category—assessments made prior to bankruptcy but as to which no "demand" was made prior to bankruptcy—did not have a lien status under the plain terms of Section 3670 of the Internal Revenue Code of 1939 which provide that in order to confer a lien status upon an assessment there must be a "demand" for payment of the assessment and a

---

**9.** The trustee also paid certain unemployment compensation tax claims of the State of New Jersey.

"neglect or refusal to pay" such assessment.

The majority, it may be noted parenthetically, has given no consideration to the statutory requirement of "neglect or refusal" to pay, and here it is obvious that since no "demand" was made for payment of the assessment prior to bankruptcy there was no "neglect or refusal" to pay on the part of the bankrupt taxpayer.

The sum of my view may be stated as follows:

Section 3670 of the Internal Revenue Code of 1939 specifically provides that a lien for taxes accrues to the United States only after a "demand" for payment is made on the "person liable to pay" and he "neglects or refuses to pay", and further, that the lien when it accrues "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."; in the instant case there was no "demand" for payment on the taxpayer, the "person liable to pay", prior to bankruptcy, nor any neglect or refusal on his part to pay, and consequently a tax lien did not accrue against property "belonging" to him and on the filing of the petition in bankruptcy the exclusive custody of the bankruptcy court attached to all of the bankrupt taxpayer's property and it being in "custodia legis" the property no longer "belonged" to the bankrupt taxpayer and accordingly there could no longer be a compliance with the provision of Section 3670 that the tax lien accrued "upon all property * * * belonging to such person."

Otherwise stated, bankruptcy acts as a "cut-off" to the making of a "demand" for payment on the "person liable to pay"; or the accrual of a tax lien against property "belonging to such person", and further, since the terms of Section 3670 are "clear and unambiguous" and its provisions extend only to the "person liable to pay" and "property belonging" to him, the notice of claims filed with the Referee, even if they can be regarded as a "demand", could not retroactively accord the status of a tax lien to the assessment on which they were based.

In Goggin v. California Labor Div., 1949, 336 U.S. 118, 125–126, 69 S.Ct. 469, 473, 93 L.Ed. 543 it was explicitly held that the government's rights against the bankrupt estate are "determined at the time of bankruptcy." In doing so it cited Everett v. Judson, 1913, 228 U.S. 474, 479, 33 S.Ct. 568, 569, 57 L.Ed. 927 where it was said:

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition."

As stated in Collier on Bankruptcy, 14th ed. (1958) Vol. 4, para. 67.26, page 277:

"The general rule in bankruptcy is that the filing of the petition freezes the rights of all parties interested in the bankrupt estate."

United States v. Ettelson, 7 Cir., 1947, 159 F.2d 193, cited by the majority, where a claim for unpaid taxes filed with a state Probate Court against the estate of a deceased taxpayer, was treated as the equivalent of the "demand" required by Section 3670, is totally inapposite. In that case bankruptcy had not intervened prior to the "demand".

Assuming that I am in error in my view that the United States, for the reasons aforementioned, did not have any lien status with respect to its claims in the second category, it seems to me incontrovertible that these claims, for a further reason, would be subordinated to expenses of administration and preferred wage claims in accordance with the provisions of Section 64, sub. a pursuant to Section 67, sub. c of the Bankruptcy Act.

Section 67, sub. c(1) provides that " * * * statutory liens, including liens for taxes or debts owing to the United

States or to any State or any subdivision thereof, *on personal property not accompanied by possession of such property* * * * shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 * * *." (Emphasis supplied.)

Section 64, sub. a(1) relates to expenses of administration and Section 64, sub. a(2) relates to preferred wage claims.

In view of the fact that in the case at bar the schedules filed by the bankrupt disclosed that all its assets were "personal property" and the United States makes no contention that it had "possession" of such property at the time the bankruptcy petition was filed, the provisions of Section 67, sub. c(1) and Section 64, sub. a(1, 2) are applicable.

We specifically so held in In re Pennsylvania Central Brewing Co., 1940, 114 F.2d 1010 at page 1012, certiorari denied Stern v. Pennsylvania Cent. B. Co., 312 U.S. 685, 61 S.Ct. 612, 85 L.Ed. 1123. Speaking for the Court, Chief Judge Biggs there said:

> "We are of the opinion that Congress has elected to treat personal property and real estate upon different bases. This is clearly one of the purposes of Section 67, sub. c. *If there is a statutory lien upon personal property not accompanied by possession* * * * *such liens are postponed in payment to expenses of administration and wage claims.* If however, the statutory lien is upon real estate, it is not postponed but is payable strictly pursuant to the provisions of Section 67, sub. b."[10] (Emphasis supplied.)

In accord is the following statement in Plumb, Federal Tax Collection and Lien Problems (Second Installment), 13 Tax L.Rev. 459, 488 (1958):

> "As against *personal property,* however, a federal tax lien not enforced by seizure or sale before

bankruptcy is subordinated to administration expenses and preferred wage claims."

What has been said on this score also applies to the claims of the United States in the first category, where assessment and demand were made prior to bankruptcy, since assuming arguendo, that these claims had a lien status as held by the majority, such lien merely attached to "personal property not accompanied by possession", and consequently must be subordinated to the payment of expenses of administration and preferred wage claims.

It is true that what has been said as to the subordination of the government's claims in the first and second categories to expenses of administration and preferred wage claims may be considered academic in view of the circumstance here that the administration expenses and preferred wage claims were actually paid prior to the government's claims, but the fact remains that the majority's opinion accorded to the government's claims a top priority over the expenses of administration and preferred wage claims, and its ruling in this respect may be cited as a precedent in other cases. That that is so is evident from the majority's holding "that the United States is entitled to prevail *against the trustee* and the Borough of East Newark on the issues presented." (Emphasis supplied.)

The District Court, as the majority points out, stated in its opinion, 167 F.Supp. at page 403 that "Its [the United States'] lien is valid and is entitled to payment out of available proceeds *prior to a distribution to priority claimants.*" Further, the District Court expressly stated: *"The liens of the Government are valid as against the trustee in each case."* (Emphasis supplied.) The Order of the District Court, under appeal, is in consonance with its opinion, and the majority has expressly affirmed it.

10. See also California State Department of Employment v. United States, 9 Cir., 1954, 210 F.2d 242.

There remains this to be said.

The majority's holding gives a priority to the government's tax claims in categories 1 and 2 over the tax claims of the Borough of East Newark. Since in my view both the government's claims and the Borough's tax claims come within the fourth priority as established by Section 64, sub. a(4) they must share pro rata in the funds available for distribution.

That that is so was settled in State of Missouri v. Ross, 1936, 299 U.S. 72, at pages 74–75, 57 S.Ct. 60, 62, 81 L.Ed. 46 where it was said:

"The intention clearly was to put these various governmental units in respect of their taxes in a single class upon terms of equality with one another. Since Congress was at pains to set forth the order of priority in distinct paragraphs under separate numerals, we are unable to reach any other conclusion. If it had been intended to establish priorities as among the governmental units named in the order in which they appear in the 6th paragraph [now 64a(4)], the very structure of § 64b plainly suggests that each would have appeared under a separate numeral instead of all being grouped under a single numeral."

As Collier on Bankruptcy para. 64.401 puts it:

"General Analysis of § 64a(4).

"All tax claims are placed on an equal footing within § 64, and no preference may be given to federal over state taxes, or to state over municipal taxes; if the estate is insufficient to pay all taxes in full, a *pro rata* distribution is contemplated."

For the reasons stated I would reverse the Order of the District Court and remand with directions to affirm the Order of the Referee.

HASTIE, Circuit Judge, joins in this dissent.