UNITED STATES, PETITIONER, *v.* RAY F. SPEERS, TRUSTEE IN
BANKRUPTCY OF THE KURTZ ROOFING COMPANY, ETC.

(No. 17—Decided December 13, 1965.)

United States Supreme Court.

*Mr. Richard M. Roberts*, for petitioner.
*Mr. Robert B. Gosline*, for respondent.

MR. JUSTICE FORTAS delivered the opinion of the court.

This case presents the question whether a federal tax lien, unrecorded as of the time of bankruptcy, is valid as against the trustee in bankruptcy.

On June 3, 1960, a District Director of Internal Revenue assessed more than $14,000 in withholding taxes and interest against the Kurtz Roofing Company. Demand for payment was made, and the taxpayer refused to pay. This gave rise to a federal tax lien.[1] Notice of the lien was not filed either in

---

[1] 26 United States Code, Section 6321 (1964 ed.) provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

26 United States Code, Section 6322 (1964 ed.) provides: "Unless another date is specifically fixed by law, the lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

the office of the recorder of Erie County, Ohio, where Kurtz had its principal place of business, or in the United States District Court, at least not before February of 1961.[2] On June 20, 1960, Kurtz filed a petition in bankruptcy. In the ensuing proceedings the trustee took the position that the federal tax lien was invalid as to him. He relied upon Section 70, sub. c of the Bankruptcy Act, 11 United States Code, Section 110, sub, c (1964 ed.), which, he asserted, vested in him the rights of a "judgment creditor, and upon 26 United States Code, Section 6323 (1964 ed.), which entitles a "judgment creditor" to prevail over an unrecorded federal tax lien. Section 70, sub. c provides in part:

"The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Section 6323 provides in part:

"[T]he lien imposed by Section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the secretary or his delegate * * *."

The trustee's position, in short, was that his statutory lien attached to all property of the bankrupt as of the date of filing of the petition; that he was a statutory "judgment creditor"; and that, under Section 6323, the unrecorded tax lien of the United States was not valid against him. This position, if sustained, would reduce the Government's claim for unpaid taxes to the status of an unsecured claim, sharing fourth-class priority with unsecured state and local tax claims under Section 64, sub. a(4) of the Bankruptcy Act, 11 United States Code, Section 104, sub. a(4) (1964 ed.), and ranking behind administrative expenses, certain wage claims, and specified creditors'

---

[2] In its brief in the Court of Appeals the Government for the first time stated that notice of the lien was in fact filed with the recorder on February 9, 1961. The statement in the referee's certificate that notice of the lien was never filed was not controverted in the District Court and, as respondent contends, there is no proof of the February filing in the record.

expenses.[3] The result in the present case is that instead of recovering the full amount owing to it, the United States would receive only 53.48%.

The trustee's position was affirmed by the referee, the District Court, and the Court of Appeals for the Sixth Circuit. 335 F. 2d 311. Certiorari was granted, 379 U. S. 958, 85 S. Ct. 665, 13 L. Ed. 2d 553, to resolve the conceded conflict between decisions of Courts of Appeals for the Second, Third, and Ninth Circuits[4] and the decision below. We affirm.

Despite the language of the applicable statutory provisions, Section 70, sub. c and Section 6323, most of the Courts of Appeals passing on the question have sustained the validity of an unrecorded federal tax lien as against the trustee in bankruptcy. They have arrived at this result on the authority of a statement in *United States* v. *Gilbert Associates, Inc.*, 345 U. S. 361, 364, 73 S. Ct. 701, 703, 97 L. Ed. 1071, that the phrase "judgment creditor" in Section 3672, the predecessor of Section 6323, was used by Congress "in the usual, conventional sense of a judgment of a court of record * * *."

It is clear, however, that this characterization was not intended to exclude a trustee in bankruptcy from the scope of the phrase "judgment creditor." The issue before the court in *Gilbert* was quite different.

[3] See Sections 64, sub. a (1)-(3), 11 United States Code, Sections 104, sub. a (1)-(3) (1964 ed.). Secured creditors, including those whose security was obtained subsequent to creation of the Government's lien, would have recourse to their security before any of the Bankruptcy Act priorities come into play. *Goggin* v. *Division of Labor Law Enforcement of California*, 336 U. S. 118, 69 S. Ct. 469, 93 L. Ed. 543; *City of Richmond* v. *Bird*, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543. Administrative expenses and wage claims precede all other statutory liens on personal property not accompanied by possession if not enforced by sale prior to bankruptcy. Section 67, sub. c, 11 United States Code, Section 107, sub. c (1964 ed.); *Goggin, supra*, 336 U. S. 126, 130, 69 S. Ct. 473-475.

[4] See *Brust* v. *Sturr*, 237 F. 2d 135 (C. A. 2d Cir.); *In re Fidelity Tube Corp.*, 278 F. 2d 776 (C. A. 3d Cir.) (Kalodner and Hastie, JJ., dissenting), cert. denied sub nom. *Borough of East Newark* v. *United States*, 364 U. S. 828, 81 S. Ct. 66, 5 L. Ed. 2d 56; *Simonson* v. *Granquist*, 287 F. 2d 489 (C. A. 9th Cir.) (Hamley, J., expressing contrary views), rev'd on other grounds, 369 U. S. 38, 82 S. Ct. 537, 7 L. Ed. 2d 557. See also *United States* v. *England*, 226 F. 2d 205 (C. A. 9th Cir.); *In re Taylorcraft Aviation Corp.*, 168 F. 2d 808, 810 (C. A. 6th Cir.) (dictum).

*Gilbert* involved neither a bankruptcy proceeding nor the rights of a trustee in bankruptcy. *Gilbert* arose out of a state insolvency proceeding. The issue was whether an unrecorded federal tax lien was valid as against a municipal tax assessment which had neither been reduced to judgment nor accorded "judgment creditor" status by any statute. The asserted superior position of the local tax claim was based upon the fact that the New Hampshire court, in the *Gilbert* insolvency proceeding, had, for the first time, conveniently characterized the local tax claim as "in the nature of a judgment," relying upon the procedures used by the taxing authorities.[5] Because the effect of federal tax liens should not be determined by the diverse rules of the various states, the court held that the municipality was not a "judgment creditor" for purposes of the federal statute. The court said:

"A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a 'judgment creditor' should have the same application in all the states. In this instance, we think Congress used the words 'judgment creditor' in Section 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts. We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something 'in the nature of a judgment,' while in other states the taxing authorities act quasi-judicially and are considered administrative bodies." (Footnotes omitted.) 345 U. S., at 364, 73 S. Ct., at 703.[6]

---

[5] 345 U. S., at 363, 73 S. Ct., at 703, quoting from *Petition of Gilbert Associates, Inc.*, 97 N. H. 411, 414, 90 A. 2d 499, 502.

[6] The Government's brief also emphasized this concern for uniformity in administration of the federal tax laws. See brief for petitioner in *Gilbert*, No. 440, 1952 Term, pages 22-24, where the Government argued: "Congress did not intend to subordinate federal tax liens to local tax liens merely because by state statute or state court decisions the local tax assessments are for local purposes denominated 'judgments' * * *. Moreover, in holding that under our 'decisions' and in 'this jurisdiction' the Town's tax assessments are 'judgments,' the court below failed to give sufficient heed to the repeated declarations of this court that the federal revenue laws should be interpreted 'so as to give a uniform application to a nationwide scheme of taxation,' and hence their provisions are not to be deemed sub-

In view of the nature of the claim for which superiority was asserted and because its dominant theme was the need for uniformity in construing the meaning of Section 3672, *Gilbert* cannot be considered as governing the entirely different situation with respect to the rights conferred by Congress upon a trustee in bankruptcy. In the latter circumstance we are confronted with a specific congressional Act defining the status of the trustee. We have no problem of evaluating widely different state laws. We have no possibility of unequal application of the federal tax laws, depending upon variances in the terms and phraseology of different state and local tax assessment statutes and judicial rulings thereon. Here we are faced with a uniform federal scheme—the rights of the trustee in bankruptcy in light of an unequivocal statement by Congress that he shall have "all" the rights of a judicial lien creditor with respect to the bankrupt's property.

The legislative history lends support to the conclusion drawn from the statutory language that the purpose of Congress was to invalidate an unrecorded federal tax lien as against the trustee in bankruptcy. It was in 1910 that Congress enacted Section 70, sub. c, vesting the trustee "with all the rights, remedies, and powers of a judgment creditor."[7] Three years later, in 1913, Congress enacted the predecessor of Section 6323, providing that an unrecorded federal tax lien was invalid as against a "judgment creditor."[8] These two statutes, with their corresponding references to "judgment creditor," co-existed for nearly 40 years. During that period, and prior to our decision in *Gilbert* in 1953, the only Court of Appeals squarely to pass upon the question decided that the trustee was a "judgment creditor" for purposes of avoiding an unrecorded federal tax lien. *United States* v. *Sands*, 174 F. 2d 384, 385

---

ject to state law unless the language of the section involved, expressly or by necessary implication, so requires."

[7]The Act of June 25, 1910, c. 412, 36 Stat. 838, 840, Section 8, provided in part: "such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

[8]Act of March 4, 1913, c. 166, 37 Stat. 1016.

(C. A. 2d Cir.), rejecting contrary dictum in *In re Taylorcraft Aviation Corp.*, 168 F. 2d 808, 810 (C. A. 6th Cir.).

In amending the Bankruptcy Act in 1950, Congress deleted from Section 70, sub. c the phrase "judgment creditor," providing instead that whether or not the bankrupt's property was in possession or control of the court, the trustee was to have "all the rights, remedies, and powers" of a creditor holding a judicial lien.[9] Elsewhere in the same legislation it was recognized that the category of those holding judicial liens includes judgment creditors,[10] and a judicial lien holder generally has "greater rights than a judgment creditor."[11] It is clear, therefore, that, with respect to the present problem, it was not the purpose of the 1950 amendments to reduce the powers of the trustee. As the House report accompanying the legislation noted, the revision of Section 70, sub. c "has been placed in the bill for the protection of trustees in bankruptcy * * * also to simplify, and to some extent expand, the general expression of the rights of trustees in bankruptcy."[12]

In 1954 Congress dealt explicitly with the question whether the trustee ought to prevail against unrecorded federal tax liens. An unsuccessful effort was made, reflected in the House version of the proposed Section 6323, expressly to exclude "artificial" judgment creditors like the trustee in bank-

---

[9] Act of March 18, 1950, c. 70, 64 Stat. 23, 26, now 11 United States Code, Section 10, sub. c. Prior to the amendment, Section 70, sub. c characterized the trustee as a lien holder as to property in the court's possession or control and as a "judgment creditor" as to property not so reduced to possession. See n. 7, supra; *Lewis* v. *Manufacturers National Bank*, 364 U. S. 603, 605-606, 81 S. Ct. 347, 348-349, 5 L. Ed. 2d 323.

[10] Act of March 18, 1950, c. 70, 64 Stat. 24, 25, now 11 United States Code, Section 96, sub. a (4). See 4 Collier, Bankruptcy, paragraph 70.49, n. 3, at 1415 (1962 ed.).

[11] See, e. g., H. R. Rep. No. 745, 86th Cong., 1st Sess., to accompany H. R. 7242, page 10: "As a matter of general law the holder of a lien by legal proceedings has greater rights than a judgment creditor * * *. It would seem anomalous to allow judgment creditors to prevail over secret tax liens and to deny that right to a judicial lien holder."

[12] H. R. Rep. No. 1293, 81st Cong., 1st Sess., to accompany S. 88, page 7; United States Code Congressional Service 1950, page 1989. That this was the tenor of the amendment is generally conceded. See, e. g., *In re Fidelity Tube Corp.*, 278 F. 2d at 781, 786-787 (both majority and dissenting opinions); 4 Collier, op. cit. supra, at 1415; Seligson, Creditors' Rights, 32 N. Y. U. L. Rev. 708, 710 (1957).

ruptcy.[13] At conference, the House conferees acceded to the views of the Senate, which deemed it "advisable to continue to rely upon judicial interpretation of existing law instead of attempting to prescribe specific statutory rules."[14] The Government suggests that the "existing law" sought to be preserved was this court's decision in *Gilbert*. But as of the date of the 1954 amendments, *Gilbert* had not yet been applied by any court to displace the rights of the trustee in bankruptcy as against an unrecorded federal tax lien. So far as that issue is concerned, it is more likely that reference to "existing law" was to the specific and then unchallenged rule announced by the Second Circuit in *United States* v. *Sands, supra*, and by other courts in other cases holding the trustee to have the rights of a judgment creditor.[15] As we have already noted, *Gilbert* is not inconsistent with the rule announced in *Sands*.

In recent years, and since the view began to spread that *Gilbert* compelled exclusion of the trustee from the benefits of Section 6323, legislation has been introduced expressly to reiterate the trustee's power to upset unrecorded federal tax liens.[16] Such legislation was proposed not to alter the statutory

---

[13]The proposed legislation was to make clear that "such protection is not extended to a judgment creditor who does not have a valid judgment obtained in a court of record and of competent jurisdiction" and that "particular persons shall not be treated as judgment creditors because State or Federal law artificially provides or concedes such persons rights or privileges of judgment creditors, or even designates them as such, when they have not actually obtained a judgment in the conventional sense." H. R. Rep. No. 1337, 83rd Cong., 2d Sess., to accompany H. R. 8300, page A407; United States Code Congressional and Administrative News 1954, page 4554. See Treas. Reg., Section 301.6323-1, incorporating the material rejected by the Eighty-third Congress.

[14]S. Rep. No. 1622, 83d Cong., 2d Sess., to accompany H. R. 8300, page 575; U. S. Code Congressional and Administrative News 1954, page 5224; H. Conf. Rep. No. 2543, 83d Cong., 2d Sess., to accompany H. R. 8300, page 78.

[15]E. g., *Sampsell* v. *Straub*, 194 F. 2d 228, 231 (C. A. 9th Cir.), cert. denied, 343 U. S. 927, 72 S. Ct. 761, 96 L. Ed. 1338; *McKay* v. *Trusco Finance Co.*, 198 F. 2d 431, 433 (C. A. 5th Cir.); *In re Lustron Corp.*, 184 F. 2d 789 (C. A. 7th Cir.), cert. denied sub nom. *Reconstruction Finance Corp.* v. *Lustron Corp.*, 340 U. S. 946, 71 S. Ct. 531, 95 L. Ed. 682.

[16]On two occasions the proposed legislation was approved by the appropriate House and Senate committees, and one bill received the assent of both Houses. See H. R. 7242, 86th Cong., 1st Sess., Section 6, vetoed by President on September 8, 1960, 106 Cong. Rec. 19168; H. R. 394, 88th Cong., 2d Sess., Section 6; H. R. 136, 89th Cong., 1st Sess., Section 6.

226

scheme, but to remove what was thought to be an erroneous gloss placed upon it by the courts. Thus, both Senate and House committee reports accompanying a recent bill, H. R. 394, 88th Congress, reflect the belief that those decisions upon which the Government now relies "would appear to be contrary to the legislative purpose which gave the trustee all the rights of an ideal judicial lien creditor."[17]

In light of these legislative materials—the adoption of the phrase "judgment creditor" in both statutes, the legislative broadening of Section 70, sub. c in 1950, and the expressions of congressional discontent with recent decisions excluding the trustee from Section 6323—we are persuaded that, read together, Section 6323 and Section 70, sub. c entitle the trustee to prevail over unrecorded federal tax liens.

The Government seeks to ward off this result with the argument that so to read the statutes is to confer upon certain classes of creditors "windfalls" unwarranted by the equities of their situation. The question may, however, be stated less invidiously than the argument indicates: it is whether the Government, unlike other creditors, and contrary to the general policy against secret liens, should be given advantage of a lien which it has not recorded as of the date of bankruptcy.[18] It is true that the consequences of depriving the United States of its secret lien is to improve the relative position of creditors— if there are any not already protected by Section 6323—whose security was obtained subsequent to the Government's lien and who, once the federal lien is invalidated, have a prior claim to the secured assets. And our decision will enhance the possibility that there will be something in the bankrupt's estate for those claimants whose priorities are higher than that afforded unsecured tax claims,[19] as well as for state and local

[17]H. R. Rep. No. 454, 88th Cong., 1st Sess., page 10; S. Rep. No. 1133, 88th Cong., 2d Sess., page 11.

[18]In enacting the predecessor of Section 6323 in 1913, Congress seems generally to have answered this question in the negative—and against secret liens. See H. R. Rep. No. 1018, 62nd Cong., 2d Sess., pages 1-2.

[19]See Section 64, sub. a (1)-(3), 11 United States Code, Section 104, sub. a (1) (3), giving priority to claims for administrative expenses, wages, and certain creditors' expenses. The claims of general creditors are, of course, in no way affected by our decision. And in some circumstances administrative expense and wage claimants would in any case prevail over the Government's lien. See n. 3, *supra.*

tax claims which share with the Federal Government the priority in Section 64, sub. a(4), 11 United States Code, Section 104, sub. a(4). Whether this result is inadvisable need not detain us,[20] for the question is one of policy which in our view has been decided by Congress in favor of the trustee. In any event, it is possible for the Government in cases which it deems appropriate, to avoid a result which it regards with unhappiness by promptly filing notice of its lien.[21] Should experience indicate that inclusion of the trustee within Section 6323 is inadvisable, the fact will not be lost upon Congress.

The Government advances one last and quite novel[22] argument predicated upon Section 67, sub. b of the Bankruptcy Act, 11 United States Code, Section 107, sub. b (1964 ed.), which provides:

"The provisions of Section 60 of the Act to the contrary notwithstanding, statutory liens [including those] for taxes and debts owing to the United States or to any state or any subdivision thereof * * * may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition * * *. Where by such laws such liens are required to be perfected

---

[20]We note that failure of the Government to record its lien may work a hardship upon persons subsequently extending credit in ignorance of the unrecorded lien, and that nondisclosure may induce others to incur administrative or other expenses which they would not incur if there were no hope of repayment. Moreover, state and local governments might reduce their claims to judgment if they knew of the existence of a federal lien. See Memorandum of Chairman, Drafting Committee of National Bankruptcy Conference, contained in S. Rep. No. 1133, 88th Cong., 2d Sess., to accompany H. R. 394, pages 24-25.

[21]In its letter to Senator Eastland opposing H. R. 394, dated September 8, 1961, the Treasury asserted that "The Service has, as a matter or administrative practice, exercised forebearance as a creditor in cases when there exists a reasonable possibility that the business can regain financial stability. Enactment of the proposed amendments * * * could very well force the service to change this practice, which it is believed has been proved by experience to be highly desirable." S. Rep. No. 1133, 88th Cong., 2d Sess., page 18. This same argument was made to an earlier Congress and rejected. See letter from Treasury, dated Aug. 9, 1960, in opposition to H. R. 7242, contained in S. Rep. No. 1871, 86th Cong., 2d Sess., page 36.

[22]In the Court of Appeals the Government advanced, as an alternative basis for disposition of the case, the contention that pursuant to Section 67, sub. b the alleged filing of notice in February of 1961 retroactively validated the lien as against the trustee. The court declined to reach the merits of

and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws * * *.''

The contention is that the lower court's reading of Section 70, sub. c and Section 6323 cannot be correct, for it precludes the possibility which appears to be contemplated by Section 67, sub. b—that a federal tax lien not perfected until after bankruptcy may nevertheless be ''valid against the trustee.'' We find no such inconsistency. The purpose of Section 67, sub. b, insofar as tax claims are concerned, is to protect them from Section 60, 11 United States Code, Section 96 (1964 ed.), which permits the trustee to avoid transfers made within four months of bankruptcy. Thus Section 67, sub. b permits an otherwise inchoate federal tax claim to be ''perfected'' by assessment and demand within the four months prior to bankruptcy or afterwards.[23] It does not nullify or purport to nullify the consequences which flow from the Government's failure to file its perfected lien prior to the date when the trustee's rights as a statutory judgment creditor attach—namely, on filing of the petition in bankruptcy.[24] There is no indication in the language of Section 67, sub. b, in the legislative history or in decisions of any court, that the subsection was intended to affect

this claim, noting that it had not been presented either to the referee or to the District Court and that there was no proof of record with respect to the alleged February filing. 335 F. 2d at 314.

The Section 67, sub. b argument raised in this court differs from that rejected below, for that subsection is now cited to us as an aid in construing the relationship between Section 70, sub. c and Section 6323. Insofar as it is relevant to the particular problem of statutory construction presented by this case, we regard the Section 67, sub. b argument as properly before us, for "Where the mind labours to discover the design of the legislature, it seizes everything from which aid can be derived." *United States* v. *Fisher*, 2 Cranch 358, 386, 2 L. Ed. 304 (Marshall, C. J.). See also *United States* v. *Hutcheson*, 312 U. S. 219, 61 S. Ct. 463, 85 L. Ed. 788; *Estate of Sanford* v. *Commissioner of Internal Revenue*, 308 U. S. 39, 42-44, 60 S. Ct. 51, 55-56, 84 L. Ed. 20; *United States* v. *Aluminum Co. of America.* 148 F. 2d 416, 429 (C. A. 2d Cir.) (L. Hand, J.).

[23]See *Simonson* v. *Grandquist*, 369 U. S. 38, 41, 82 S. Ct. 537, 539, 7 L. Ed. 2d 557; 4 Collier, op. cit. *supra*, paragraph 67.20, at 183; cf. *Lewis* v. *Manufacturers National Bank*, 364 U. S., at 609, 81 S. Ct., at 350.

[24]4 Collier, op. cit, *supra*, paragraph 67.26, at 283-286, and paragraph 70. 48, at 1407,

the construction or application of Section 6323. In any event, we should hesitate to read Section 67, sub. b as relevant to the relationship between Section 70, sub. c and Section 6323, for Congress in the very legislation proposed to clarify the trustee's rights under Section 6323 did consider Section 67, sub. b, and evidenced no awareness of interrelationship or of inconsistency.[25]

*Judgment affirmed.*

MR. JUSTICE BLACK, dissenting.

Section 6323 of the 1954 Internal Revenue Code provides that an unfiled tax lien is not "valid as against any mortgagee, pledgee, purchaser, or judgment creditor * * *." The court here holds that a bankruptcy trustee must be treated as if he were a "judgment creditor" thereby reducing government tax claims to the level of unsecured creditors. I am unable to agree. A bankruptcy trustee cannot be treated as a judgment creditor except by giving that term an entirely artificial, fictional meaning. The court justifies this extraordinary twist of meaning by reference to Section 70, sub. c of the Bankruptcy Act, 11 United States Code, Section 110, sub. c. That section, so far as here pertinent, provides:

"c. * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

This language gives no intimation of a purpose to destroy a valid tax lien such as the Government had here when bankruptcy occurred. The section's terms simply show a purpose to make sure that all the property the bankrupt had before bankruptcy will be vested in the trustee. It stretches this lan

---

[25]See legislative materials cited at notes 11, 16, and 17, *supra*.

230

guage entirely too much to say it was intended to change the law so drastically that the mere appointment of a trustee could render invalid a government tax lien which was perfectly valid the moment before bankruptcy. Nor can this section fairly be read as an attempt by Congress to nullify valid government tax liens by placing the claims of all unsecured creditors of the bankrupt on the same level as valid tax liens. In writing Section 70, sub. c Congress was amending the bankruptcy law, not the government tax lien law that dates back nearly 100 years. I still think, as we said in *United States* v. *Gilbert Associates, Inc.*, 345 U. S. 361, 364, 73 S. Ct. 701, 97 L. Ed. 1071, that in enacting the predecessor of Section 6323 Congress used the words ''judgment creditor'' in ''the usual, conventional sense of a judgment of a court of record * * *.'' The Second, Third, and Ninth Circuits have so construed this section. I think they were right. The court today gives frail and inadequate support, I think, for its judicial destruction of the Government's congressionally created lien.

I would reverse this judgment.