In the Matter of Adam Charles FISHER, a/k/a A. Charles Fisher, a/k/a Charlie Fisher, a/k/a Adam C. Fisher, a/k/a A. C. Fisher, a/k/a Adam Fisher, t/d/b/a Charles Fisher Lumbering and Rebecca Elaine Fisher.

Harold R. HAYES et al., Plaintiffs,

v.

Warren W. BENTZ, Trustee in Bankruptcy and Adam Charles Fisher and Rebecca Elaine Fisher, his wife, et al., Defendants.

Civ. A. No. 79–170–k Erie.
Bankruptcy Nos. 77–231 and 77–232.

United States District Court,
W. D. Pennsylvania.

June 19, 1980.

Eugene J. Brew, Jr., Erie, Pa., for plaintiff Harold R. Hayes.

Warren W. Bentz, Erie, Pa., pro se for trustee in bankruptcy.

John P. Eppinger, Erie, Pa., for bankrupts.

John Paul Garhart, Asst. U. S. Atty., Erie, Pa., Beth A. Kaswan, Trial Atty., Tax Division, U. S. Dept. of Justice, Washington, D.C., for United States.

## MEMORANDUM ON GOVERNMENT'S APPEAL FROM ORDER OF BANKRUPTCY COURT

WILLSON, Senior District Judge.

This civil action comes before me on the appeal of the Government from an Order entered by The Honorable William B. Washabaugh, Jr., Bankruptcy Judge, on October 19, 1979. On October 30, 1979, Harold R. Hayes filed a cross–appeal from the same Order of Judge Washabaugh. The Bankruptcy Judge filed his record and the notices of appeal with the Clerk of Court on November 20, 1979. Counsel for all parties have been heard at argument and the briefs have been considered.

The case is before me under the prior bankruptcy law, and the rules pertaining thereto particularly Rule 810, the first sentence of which reads:

> "Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings."

Upon due consideration this Court is satisfied that the Bankruptcy Judge has incorrectly decided this case on undisputed facts.

It is believed unnecessary for this Court to review extensively the rather lengthy memorandums of Judge Washabaugh. It is suffice to say that the crux of his holdings is that the federal tax lien is ineffective as against an unrecorded deed. For instance, on page 2 of his memorandum filed October 19, 1979, he says in part:

> " . . . and for the additional reason that the federal tax liens filed against the bankrupts' unrecorded title to the subject premises are invalid as against the lien of the trustee in bankruptcy as an ideal judgment creditor with an unsatisfied writ of execution thereagainst."

The ownership of real property in Pennsylvania is determined by state law,

but federal law determines the priority of United States tax liens on that property. Counsel for the United States filed what it terms an appellate brief on November 14, 1979. It is undisputed that the federal tax liens in this case were filed in the Office of the Prothonotary of Erie County, Pennsylvania, at a time when the bankrupt had title and possession of the real property in question though his deed was unrecorded. Among the assets of the bankrupt in the trustee's complaint for sale of real estate divested of liens is a description of the property in question.

This Court understands that Judge Washabaugh held two evidentiary hearings on the claim of Harold R. Hayes as presented by his counsel. One hearing was held on October 27, 1977, and another on November 10, 1977.

In the Government's appellate brief, a resumé of the evidence taken before the Bankruptcy Court appears as follows:

"In 1963 Milton C. Payne purchased the subject property for $4,100 granting a mortgage to plaintiff Hayes in the same amount. (Nov., p. 14).

"Both the deed to Payne and the $4,100 mortgage were recorded. (Oct., p. 4). Sometime around 1969 plaintiff Hayes provided Payne with funds to purchase a farm. Payne and Hayes made an oral agreement that Payne would transfer to Hayes the subject property but no deed was ever executed to that effect. (Oct., pp. 36, 37; Nov., pp. 50, 51, 76). Nor was any writing produced during the two evidentiary hearings to evidence this agreement.

"In June of 1970 Payne executed a deed to the bankrupt, Adam Fisher, of the subject property. (Nov., pp. 15–17). Hayes' son (Oct. 10–12; Nov., pp. 38, 39) had the bankrupt execute a $14,000 mortgage in favor of Mr. Hayes. (Oct. p. 13; Nov., p. 39). Neither the bankrupt's deed nor Mr. Hayes' mortgage were recorded. (Nov., pp. 60, 61).

"On or about the Fall of 1976, Payne fully paid off his debts to Hayes including the $4,100 note secured by the 1963 mortgage on the subject property. (Nov., pp. 26, 30, 34, 71)."

The following recital from the appellate brief also refers to the proceedings before the Bankruptcy Court:

"After the two evidentiary hearings, the Court issued an order distributing the proceeds to the plaintiff, which order was vacated upon the Court's being given notice that the United States wished to be made a party to this proceeding. The United States filed its answer to Hayes' complaint and cross–claimed to have the sales proceeds distributed to the United States in partial satisfaction of its tax liens, notice of which were duly filed before institution of these bankruptcy proceedings. The United States then moved for summary judgment on its cross–claim. After the hearing on the United States' motion the Court reaffirmed its prior order distributing the sales proceeds first to Hayes in satisfaction of its 'secured claim' and the balance to the bankruptcy trustee."

As indicated, both the discussions in the Government's brief on its motion for summary judgment and in its appellate brief filed before me refer to the provisions of the Code and the authoritative decisions on the subject of the priority of a federal tax lien. Apparently Mr. Hayes feels that he should be given consideration with respect to his oral understandings, which he had reached with the bankrupt prior to these proceedings. But in my view the federal tax lien law is clear. The Government has asserted its position very clearly and succinctly in the appellate brief. It is incorporated herein by reference and made a part of this decision.

Judge Clary's decision in *Reiter vs. Kille*, 143 F.Supp. 590 (E.D.Pa.1956), is based on the position of a subsequent bonafide purchaser, and the evidence he had before him is unlike the issue before this Court.

An Order follows.

### GOVERNMENT'S APPELLATE BRIEF

The Government appeals from the following two findings of the bankruptcy referee:

1. That the United States tax lien, for which a notice of tax lien was duly filed, failed to attach to the bankrupt-taxpayer's real estate because the taxpayer failed to record its deed.

2. That the creditor Hayes had a prior perfected interest in the bankrupt's real estate.

The Government contends that the question of the efficacy of the federal tax lien is a matter of federal lien law and that its lien may not be undermined by the taxpayer's failure to record its deed in accordance with State law. The Government further contends that once Hayes' secured debt was satisfied the corresponding mortgage was extinguished by operation of law; that Hayes may have subsequently acquired an unsecured debt from a different debtor but involving the same plot of real estate can not revive an earlier extinguished mortgage.

### STATEMENT OF FACTS

On August 30, 1977 Adam Charles Fisher and Rebecca Elaine Fisher filed a voluntary petition in bankruptcy. As part of his duties as trustee, W. Bentz filed a complaint with this Court to sell a parcel of the bankrupt's real estate free and clear of liens, the cleared liens then to attach to the sales proceeds. (See Complaint for Sale of Real Estate Divested of Liens). The United States, who was made a party to this suit, had no objection to the proposed action of the trustee. The Court ordered the sale and $16,500 in proceeds were received.

Soon after the filing of the trustee's complaint, a creditor Harold R. Hayes, filed a complaint joining only the bankrupt and the trustee as parties and requesting that the bankrupt's estate disclaim any interest in the real estate which was the subject of the trustee's complaint or in the alternative, allow him, Mr. Hayes to foreclose on his purported mortgage. (Hayes Complaint, paragraphs 11 and 12).

The Court scheduled two evidentiary hearings on Mr. Hayes' complaint, one on October 27, 1977 and one on November 10, 1977. The following facts may be gleaned from the testimony taken on these two dates.[1]

In 1963 Milton C. Payne purchased the subject property for $4,100 granting a mortgage to plaintiff Hayes in the same amount. (Nov., p. 14).

Both the deed to Payne and the $4,100 mortgage were recorded. (Oct., p. 4). Sometime around 1969 plaintiff Hayes provided Payne with funds to purchase a farm. Payne and Hayes made an oral agreement that Payne would transfer to Hayes the subject property but no deed was ever executed to that effect. (Oct., pp. 36, 37; Nov., pp. 50, 51, 76). Nor was any writing produced during the two evidentiary hearings to evidence this agreement.

In June of 1970 Payne executed a deed to the bankrupt, Adam Fisher, of the subject property. (Nov., pp. 15–17). Hayes' son (Oct. 10–12; Nov., pp. 38, 39) had the bankrupt execute a $14,000 mortgage in favor of Mr. Hayes. (Oct. p. 13; Nov., p. 39). Neither the bankrupt's deed nor Mr. Hayes' mortgage were recorded. (Nov., pp. 60, 61).

On or about the Fall of 1976, Payne fully paid off his debts to Hayes including the $4,100 note secured by the 1963 mortgage on the subject property. (Nov., pp. 26, 30, 34, 71).

After the two evidentiary hearings, the Court issued an order distributing the proceeds to the plaintiff, which order was vacated upon the Court's being given notice that the United States wished to be made a party to this proceeding. The United States filed its answer to Hayes' complaint and cross-claimed to have the sales proceeds distributed to the United States in partial satisfaction of its tax liens, notice of which were duly filed before institution of these bankruptcy proceedings. The United States then moved for summary judgment on its cross-claim. After the hearing on

---

1. Testimony cited from the October hearing will be designated "Oct." and from the November hearing as "Nov." The United States was not made a party to the Hayes proceedings until after both evidentiary hearings were held.

494

the United States' motion the Court reaffirmed its prior order distributing the sales proceeds first to Hayes in satisfaction of its "secured claim" and the balance to the bankruptcy trustee.

## ARGUMENT

### I

### THE GOVERNMENT'S TAX LIENS ARE EFFECTIVE AS AGAINST THE BANKRUPTCY TRUSTEE AND ATTACH TO THE FULL AMOUNT OF THE PROCEEDS FROM THE REAL ESTATE SALE

The validity of a federal tax lien is determined by federal lien rather than bankruptcy law. *Delaney v. City of Denver*, 185 F.2d 246 (C.A. 10, 1950); *California State Department of Employment v. United States*, 210 F.2d 242 (C.A.9, 1954). As is fully explained in Collier on Bankruptcy, 14th ed., Vol. 4, par. 67.20 pp. 312:

> The tax lien to be valid must meet the standards of Section 67(c)(1)(B) as determined by applicable lien law. In the case of the federal tax lien, this means that notice of the tax lien must be properly filed before bankruptcy. Under Section 6323 of the Internal Revenue Code, a federal tax lien although arising by assessment is not valid against purchasers and judgment lien creditors until notice of the lien is filed.

Once it is established that, under state law, the taxpayer has an interest in property,[2] federal law determines the priority of competing liens on that property. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

Section 6321 of the Internal Revenue Code of 1954 (26 U.S.C.) provides that upon assessment of a taxpayer for failing to pay any federal taxes owed, a lien in favor of the United States for the amount of the unpaid taxes immediately attaches to "all property and rights to property, whether real or personal, belonging to such person." This lien attaches to all property in existence on the date of the assessment or acquired thereafter. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1946). Section 6323(a) of the Internal Revenue Code of 1954 (26 U.S.C.) provides that this lien for unpaid taxes "shall not be valid as against any purchaser, holder of a security interest, mechanics lienor, or judgment lien creditor" until a Notice of Federal Tax Lien has been filed pursuant to Section 6323(f).[3] Thus for purposes of determining the relative priorities of the federal tax liens and other secured creditors against the funds deposited with this Court, the United States has valid liens as of the dates of filing its lien notices which are set forth in its proof of claim.[4]

Generally, a contest between the federally created tax lien and a competing local interest will be resolved by resort to the "first in time, first in right" rule enunciated in *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). For purposes of this rule, it is critical to determine when competing state created liens come into existence or become valid. *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963). As discussed above, the federal lien is perfected as against the bankruptcy trustee and other judgment lien creditors upon the filing of the Notice of Federal Tax Lien. The state lien only en-

---

**2.** Pursuant to Pennsylvania law, the bankrupt obtained good title to the subject real estate upon the delivery of the deed. *City Stores Co. v. Philadelphia*, 376 Pa. 482, 103 A.2d 664 (1954), *Malamed v. Sedelsky*, 367 Pa. 353, 80 A.2d 853 (1951).

**3.** The bankruptcy trustee is deemed to be a "judgment lien creditor" for purposes of Section 6323(a) as of the day of filing of the bankruptcy petition. *United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1966).

**4.** The proof of claim establishes that notices of lien were filed as follows:

| Amount Due | Date of Filing |
|---|---|
| $2,031.04 | 6–7–74 |
| $3,620.24 | 6–7–74 |
| $6,335.78 | 6–9–76 |
| $6,058.75 | 7–13–77 |

joys priority over the federal tax lien if it becomes a choate lien against the property prior to the perfection of the federal tax lien. *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). To be choate, the private lien holder must establish with certainty the identity of the lienor, the property subject to the lien and the fixed amount of the lien. *United States v. City of New Britain, supra.* Choateness, or the perfection of a state–created lien so as to defeat a later-arising or later–filed federal tax lien, is always a federal question, with choate liens being "perfected" in the sense that there is nothing more to be done. *United States v. Pioneer American Ins. Co., supra*, 374 U.S. pp. 88–89, 83 S.Ct. pp. 1654–1655.

To the extent that any creditor can establish that it perfected its state–created lien against the subject real estate prior to the filing of the applicable federal tax lien, that creditor would be entitled to priority over the deposited funds. Mr. Hayes, however, lacks such a perfected state–created lien.

## II

### THE PLAINTIFF, HAYES, HAS NO PERFECTED SECURITY INTEREST IN THE PROCEEDS FROM THE SALE OF THE SUBJECT REAL ESTATE

The plaintiff raises two possible claims against the subject sale proceeds: (1) a 1963 debt of $4,100 due from Milton Payne which was secured by a duly recorded mortgage and (2) the 1970 $14,000 unrecorded purchase money mortgage.

A. *As Payne's debt was repaid, the mortgage securing that debt is invalid*

Mr. Payne, Mr. Fisher and Mr. Hayes all testified that the $4,100 debt was paid. Mr. Hayes may not again collect this debt by virtue of his failure to mark the recorded mortgage satisfied; the mortgage is merely the collateral supporting the underlying debt. In addition Pennsylvania law requires a mortgagee to so mark the mortgage satisfied upon the request and tendering of fees of the mortgagor or property owner. 21 Pa. Statutes, Section 712.

■ Nor may the 1976 payment by Payne of the $4,100 debt be applied to diminish the claim supported by the $14,000 unrecorded mortgage. The $14,000 debt is owed by the bankrupt, Fisher, not by Payne. Those jurisdictions which allow a creditor to choose to apply a payment to his debtor's unsecured rather than secured obligation presume that the debtor on both claims are the same person. It defies all logic to allocate the payment by the first debtor to the debt of the second debtor in order to revive the first filed mortgage. When the first debt is satisfied its correlative mortgage is extinguished by operation of law. A creditor may not continue its interest in real estate by defying State law which requires him to mark a paid debt satisfied, 21 Pa. Statutes, Section 712.

B. *The unrecorded mortgage did not convey any security interest in the real estate*

■ Under Pennsylvania law, an executed deed, delivered and accepted passes title, *City Stores Co. v. Philadelphia*, 376 Pa. 482, 103 A.2d 664 (1954) *Malamed v. Sedelsky*, 367 Pa. 353, 80 A.2d 853 (1951) and the failure to record renders the conveyance fraudulent and void only as to subsequent *bona fide* purchasers or secured creditors without notice of the transfer. 21 Pa. Statutes, Section 351. Contrary to the referee's finding, the bankrupt did have good title despite his failure to record.

■ Pennsylvania does not, however, recognize an unrecorded mortgage. Section 621 of Title 21 of the Pennsylvania Statutes provides:

*Mortgages to be recorded within six months*–"No deed or mortgage, or defeasible deed, in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, unless such deed be acknowledged or proved and recorded within six months after the date thereof . . .

As under Pennsylvania law, the unrecorded mortgage grants no security interest as against competing judgment creditors, it is not a recognized lien under the Bankruptcy Act. *Stover v. Valley National Bank of Chambersburg*, 48 F.2d 54 (C.A.3, 1931).

## CONCLUSION

As the United States had valid tax liens attaching to the bankrupt's real estate, which liens were ordered cleared from the real estate and transferred to the sales proceeds and which liens are in excess of the sum held by the trustee, the United States respectfully requests that the United States District Court reverse the order of the referee and order the trustee to turn over to the United States in partial satisfaction of its tax liens the full $16,500 in proceeds.

ROBERT J. CINDRICH
United States Attorney

By:

(s) John Paul Garhart
Assistant United States Attorney