In re FEDERATION OF PUERTO RI-
CAN ORGANIZATIONS OF BROWNS-
VILLE, INC., Debtor.

UNITED STATES of America, Plaintiff,

v.

FEDERATION OF PUERTO RICAN OR-
GANIZATIONS OF BROWNSVILLE,
INC.; Finkel, Goldstein, Berzow & Ro-
senbloom, Attorneys for the Creditors
Committee, Defendants.

No. CV 92–4807.

United States District Court,
E.D. New York.

June 2, 1993.

Kera & Graubard (M. David Graubard, of counsel), New York City, for debtor.

Zachary W. Carter, U.S. Atty. (Joseph D. McCann, Patricia C. Henry, Asst. U.S. Attys., of counsel), Brooklyn, NY, for plaintiff.

Finkel Goldstein Berzow & Rosenbloom (Neal M. Rosenbloom, Michael L. Carey, of counsel), defendant pro se.

### MEMORANDUM AND ORDER

NICKERSON, District Judge:

This is an appeal by the United States from a September 14, 1992 order of United States Bankruptcy Judge Dorothy Eisenberg dismissing an adversary proceeding brought by the United States to obtain funds now held in an escrow account.

The funds represent amounts owed by the New York State Office of Mental Retardation and Developmental Disabilities (the State Office) to Federation of Puerto Rican Organizations of Brownsville, Inc. (the debtor), now the debtor-in-possession, and paid in settlement of the debtor's appeals of Medicaid rates for services rendered prior to the filing of the petition under Chapter 11 of the Bankruptcy Code.

The United States claims that it is entitled to the funds because they were the subject of an Internal Revenue Service (IRS) Notice of Levy served on the State Office prior to the filing of the petition under Chapter 11.

On January 17, 1990, the IRS mailed a Notice of Levy to the State Office showing

pre-petition tax liabilities assessed against the debtor in the amount of approximately $3,400,000 for unpaid employment taxes. The State Office received the Notice of Levy before the petition date.

On February 2, 1990, the debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. On that date the debtor-in-possession obtained the rights and powers of a judgment lien creditor pursuant to 11 U.S.C. § 544.

Ten days later, on February 12, 1990, IRS filed a notice of lien with the New York Secretary of State in the amount of $2,556,301.01.

About June 3, 1991 the State Office granted the debtor-in-possession a rate adjustment for pre-petition Medicaid services in the amount of about $1,715,000, recognizing set-offs of, according to the debtor-in-possession, approximately $200,000.

Despite the IRS's levy and without giving notice to the United States, the State Office began reimbursing the debtor's estate in accordance with the rate adjustment, and on July 1, 1991, on motion of counsel for the Official Committee of Unsecured Creditors (the Committee), the bankruptcy court directed that the funds be paid to the debtor-in-possession and then turned over to the Committee's counsel to be held in a special account. The funds are now held in an escrow account under the control of the Committee's counsel.

The United States, not having been served with the pleadings in the proceedings with respect to the turnover of funds to the debtor-in-possession, made a motion to require payment by the debtor-in-possession to the IRS of funds held by various entities including the State Office. The United States then learned that the State Office had paid funds to the debtor-in-possession. The debtor-in-possession refused to pay the funds to the United States, except for some $285,600 for which the IRS had filed a notice of tax lien with the New York Secretary of State on May 26, 1988. The United States then initiated the present adversary proceeding in the Bankruptcy Court seeking turnover of the funds.

Bankruptcy Judge Eisenberg dismissed the adversary proceeding and determined that the claim of the IRS "to the extent that it is covered by the notice of tax lien filed with the Secretary of State on February 12, 1990" was "an unsecured claim." The court reasoned that because the notice of a tax lien was not filed pre-petition the claim was "unfortunately" an "unsecured claim," "not valid against a hypothetical bona fide purchaser, as required by Section 545 of the Bankruptcy Code" and "subject to avoidance" by the debtor-in-possession.

The United States argues in this court that the IRS levy accomplished a constructive possession of the funds and terminated the debtor's interest in them prior to the petition date.

### I.

Analysis of the issues in this case starts with *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), *aff'g* 674 F.2d 144 (2d Cir.1982). Whiting Pools, Inc. (Whiting) owed some $92,000 in Federal Insurance Contribution Act (FICA) taxes and withholding taxes but had failed to respond to assessment and demands for payment by the IRS.

Section 6321 of Title 26 reads as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

In *Whiting Pools* the IRS had seized Whiting's tangible personal property pursuant to the levy and distraint provisions of 26 U.S.C. § 6331 in order to satisfy the lien that arose from Whiting's failure to pay the IRS. Section 6331 provides, in substance, that if a person liable to pay taxes refuses to pay within ten days after notice and demand, the IRS may collect the tax by levy upon all property and rights to property belonging to the person. The IRS may then seize and sell the property to satisfy the tax liabilities.

The day after the seizure by the IRS of Whiting's tangible person property, Whit-

ing filed a petition for reorganization under 11 U.S.C. § 1101, *et seq.* (Chapter 11). Whiting was continued as debtor-in-possession.

The United States, intending to proceed with a tax sale of the property, moved in the bankruptcy court for a declaration that the automatic stay provision of the Bankruptcy Code, § 362(a), was inapplicable to the IRS, or, in the alternative, for relief from the stay. Whiting counterclaimed for an order requiring the IRS to turn the seized property over to the bankruptcy estate pursuant to 11 U.S.C. § 542(a).

That section requires an entity in possession of "property that the trustee may use, sell, or lease under § 363" to deliver that property to the trustee. Subsections (b) and (c) of 11 U.S.C. § 363 authorize the trustee to use, sell, or lease any "property of the estate," subject to certain conditions for the protection of creditors with an interest in the property. Section 541(a)(1) of Title 11 defines the "estate" so far as pertinent, as "comprised of all the following property wherever located: ... all legal or equitable interests of the debtor in the property as of the commencement of the case."

The Supreme Court, noting that under 11 U.S.C. § 541(a)(1) the estate of the debtor in reorganization includes property seized by a secured creditor before the filing of the petition, held that the result should be no different when the IRS is a creditor. The Court reasoned that although the IRS's powers under 26 U.S.C. §§ 6321–6326 to enforce a tax lien are greater than those possessed by private secured creditors, those provisions do not transfer ownership of the property to the IRS. Rather they provide provisional remedies to bring the property into the legal custody of the IRS. The Court concluded that "[o]wnership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." 462 U.S. at 211, 103 S.Ct. at 2317.

In *Whiting Pools* the Supreme Court and Court of Appeals identified three interests retained by the debtor in the property seized by the IRS: 1) the right to a notice of sale, 26 U.S.C. § 6335(b); 2) the right to redeem the property prior to a sale by paying its tax obligations, 26 U.S.C. § 6337(a); and 3) the right to any surplus realized on the sale of the property, 26 U.S.C. § 6342. 462 U.S. at 211, 103 S.Ct. at 2317; 674 F.2d 144, 156–58 (2d Cir.1982). The Court found these interests sufficient to consider the property part of the debtor's estate and to require turnover, even though the facts showed that the proceeds of any sale would be unlikely to exceed the debtor's tax liabilities. But the Court found also that because the IRS had seized the levied property, it was entitled to "adequate protection" of its "possessory interest obtained pursuant to its tax lien, a secured interest." 462 U.S. at 206–07, 103 S.Ct. at 2314–15.

In the present case the debtor's interests in the receivables from the State Office as of the date of the petition were the same as the debtor's interests in its property in *Whiting Pools. See In re Anaheim Electric Motor, Inc.*, 137 B.R. 791 (Bankr. C.D.Cal.1992) (IRS levy on receivables does not transfer ownership; receivables are not cash equivalent and must be turned over to the estate).

Absent the levy the receivables from the State Office were the undisputed property of the reorganization estate. If no sale were required to liquidate an asset seized pursuant to a levy, ownership would transfer from the debtor to the IRS at the moment of seizure. But the claim of the debtor against the State Office—the debtor's "cause of action"—simply represents a claim for receivables and is subject to sale. The statutory language of sections 6335 and 6337, providing for the rights of notice before sale of seized property and the opportunity to redeem property at any time prior to the sale, do not distinguish between tangible property and intangible property such as receivables.

The Internal Revenue Code levy provisions make a distinction only as to "money." Section 6342 of Title 26 authorizes the IRS to apply "money realized" by a levy, whether through "seizure" *or* "sale," to the expenses of the levy and sale and

then to satisfy the tax liabilities. The IRS is required to refund any surplus to the taxpayer. The IRS therefore can terminate a taxpayer's right to "money," other than surplus, obtained by seizure but without a sale.

Had the IRS, by mailing notice of its levy to the State Office, seized "money," then it would have terminated the debtor's rights as identified in *Whiting Pools*. Yet even if the IRS's notice of levy constructively seized the receivables, the receivables levied were not "money." The amount owed by the State Office to the debtor was the subject of rate appeals beginning in 1987 and was not paid until after the petition when the debtor brought an adversary proceeding in bankruptcy court.

IRS cites several cases holding that IRS acquires ownership of receivables merely by serving a notice of levy on the individual or organization owing on the receivables. *See Cross Electric Co. v. United States*, 664 F.2d 1218 (4th Cir.1981); *In re Sigmund London, Inc.*, 139 B.R. 765 (Bankr. E.D.N.Y.1992); *In re Professional Technical Servs.*, 71 B.R. 946 (Bankr.E.D.Mo. 1987). On the other hand, many courts have come to a contrary conclusion. *See In re Challenge Air Int'l Inc.*, 952 F.2d 384 (11th Cir.1992); *In re Anaheim*, 137 B.R. 791 (Bankr.C.D.Cal.1992); *In re Suppliers, Inc.* 41 B.R. 520 (Bankr.E.D.Ky. 1984); *In re Davis*, 35 B.R. 795 (Bankr. W.D.Wash.1983).

*Cross Electric* was decided before *Whiting Pools* and was implicitly overruled. 462 U.S. at 202, 103 S.Ct. at 2312. Both *Sigmund London* and *Professional Technical Services* distinguish *Whiting Pools* on the ground that it involved tangible property. Both courts said that the interests identified in *Whiting Pools* did not apply to receivables, either because receivables are cash, 71 B.R. at 949–50, or an intangible "chose in action," 139 B.R. at 768.

As noted above, under 11 U.S.C. § 541(a)(1) the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The Court in *Whiting Pools* recognized

that the legislative history of the Bankruptcy Code shows that this section was designed to reach all types of property, "tangible or intangible," including "causes of action," 462 U.S. at 205 n. 9, 103 S.Ct. at 2313 n. 9.

Both *Sigmund London* and *Professional Technical Services* found that the rights of redemption and surplus did not apply to receivables worth less than the tax liabilities because no reasonable debtor would pay more than the account was worth to redeem it and there would be no surplus.

The court in *Sigmund London* acknowledged that collection on receivables is sometimes difficult but stated that the nature of the property interest should not turn on the "practical difficulties in collectibility." 139 B.R. at 770. *Professional Services* similarly stated that the "ministerial action of receiving the amount ... is not considered by this Court to be a substantial step in completing the levy." 71 B.R. at 951. The *Sigmund London* court even stated that receivables "may be subject to sale."

The fact that another step is necessary for the IRS to collect on receivables levied demonstrates to this court that it is not "money" within the meaning of 26 U.S.C. § 6342 and that more than a notice of levy is necessary to transfer ownership.

This court concludes that in mailing notice to the State Office of its levy on the receivables due from the State Office to the debtor, the IRS did not divest the debtor of its interests in that property.

## II.

█ Having determined that the receivables owed from the State Office are property of the estate, this court now turns to whether the bankruptcy court correctly found that the IRS's claim against the estate is unsecured.

The Bankruptcy Code provides that

The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

.   .   .   .   .

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

11 U.S.C. § 545.

A debtor-in-possession has the rights, powers and duties of a trustee, with certain exceptions not relevant here. 11 U.S.C. § 1107(a). Thus the debtor-in-possession could avoid an IRS lien unless it would be enforceable against a bona fide purchaser of the debtor's property on the date of the petition for bankruptcy.

As noted above, under 26 U.S.C. § 6321 the IRS acquires a statutory lien against a person's "property and rights in property" when it assesses taxes and that person fails to pay.

But the Internal Revenue Code further provides that "the lien imposed by section 6321 shall not be valid as against any purchaser ... until notice ... has been filed by the Secretary." 26 U.S.C. § 6323(a). For personal property "whether tangible or intangible" the notice referred to must be filed with the office designated under state law for the filing of liens. 26 U.S.C. § 6323(f).

It is not disputed that the IRS did not file a lien before the debtor filed its bankruptcy petition. The IRS therefore did not perfect its lien under the Internal Revenue Code. *See United States v. Speers*, 382 U.S. 266, 275, 86 S.Ct. 411, 416, 15 L.Ed.2d 314 (1965) (unfiled federal tax lien is not valid against trustee in bankruptcy; Congress has made no exception for IRS to "general policy against secret liens"); *In Re Hudgins*, 967 F.2d 973 (4th Cir.1992) (chapter 11 bankrupt could avoid under 11 U.S.C. § 545(2) federal tax liens improperly filed if purchaser would have no constructive notice).

The IRS would still be entitled to protection if by filing a levy it had perfected its lien under state law. *See In re Loretto Winery Ltd.*, 898 F.2d 715, 718 (9th Cir. 1990) (whether the IRS's lien is "enforceable" against a purchaser within the meaning of § 545(2) determined by law of state in which property sits).

New York law ordinarily requires public notice to perfect an interest. N.Y. U.C.C.Law § 9–302 (McKinney 1990). Although the Court in *Whiting Pools*, 462 U.S. at 206 n. 14, 103 S.Ct. 2314 n. 14, found that the IRS had a "secured interest" based on its unfiled tax lien, the IRS had seized the goods, which in New York perfects the security interest without filing. N.Y.U.C.C. Law § 9–305. As the Court noted, the "levy *and seizure* provisions, 26 U.S.C. §§ 6331, 6332, are special procedural devices available to the IRS to protect and satisfy its liens." 462 U.S. at 210–11, 103 S.Ct. at 2316 (emphasis added) (citations omitted). *See also Brust v. Sturr*, 237 F.2d 135 (2d Cir.1956) (IRS perfected unfiled tax lien by taking possession).

In the present case the IRS did not have actual possession of the "money" and thus a purchaser at the time the petition was filed would have had no notice of the IRS lien. *See Southern Rock, Inc. v. B & B Auto Supply*, 711 F.2d 683, 687 (5th Cir.1983) (notice of levy without seizure insufficient to perfect IRS lien against creditor because notice of levy fails to provide notice); *United States v. Jenison*, 484 F.Supp. 747, 756 (D.R.I.1980) (IRS not entitled to priority for levy on unfiled lien because "notice of levy is not equivalent to filing a notice of lien"). Furthermore, accounts receivables cannot be perfected by possession without filing a notice of lien. N.Y.U.C.C.Law §§ 9–302, 9–305.

That a trustee can avoid an unperfected tax lien under 11 U.S.C. § 545(2) is confirmed by the legislative history. Section 6323(b) of Title 26 provides that as to certain property, such as securities, even a filed tax lien is invalid. The Senate Report on the Bankruptcy Reform Act of 1978 noted that a trustee in bankruptcy could avoid filed tax liens that would be invalid under § 6323(b) and proposed to eliminate that power of the trustee. S.Rep. No. 989, 95th Cong., 2d Sess. 85–86 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5871. The final bill did not contain that proposal. *See In re Sierer*, 121 B.R. 884 (Bankr.N.D.Fla.

1990) (under § 545(2) trustee can avoid filed tax liens as to property listed in § 6323(b)).

Given that a trustee continues to have the power to avoid filed tax liens that are invalid under § 6323(b), it follows that the trustee has the power to avoid unfiled tax liens under § 6323(a). *See* 4 *Collier on Bankruptcy* ¶ 545.04[3] (Lawrence P. King, ed., 15th ed. 1993) (if "notice of the tax lien has not been filed before bankruptcy it ... would be subject to avoidance by the trustee").

Indeed the government does not contend that it is a secured creditor and concedes that "in order for a federal tax lien to be accorded 'secured' status in bankruptcy, a notice of federal lien must be filed."

The federal tax lien having been avoided, the IRS becomes an unsecured creditor. *See In Re Darnell,* 834 F.2d 1263, 1265 n. 5 (6th Cir.1987) (liens avoided under § 545(2) are "relegated to unsecured status"). But the IRS is entitled to priority within the estate coming before general creditors. 11 U.S.C. 507(a)(7) (granting seventh priority to "unsecured claims of governmental units" including "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity"). *See Matter of Official Committee of Unsecured Creditors of White Farm Equipment Co.,* 943 F.2d 752, 754 (7th Cir.1991) (withholding and FICA taxes entitled to seventh priority), *cert. denied,* —— U.S. ——, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992).

### III.

The judgment of the bankruptcy court is affirmed.

So ordered.